[No. 1772]

## THE STATE OF NEVADA, Respondent, v. HENRY WEBER, Appellant.

1. EMBEZZLEMENT—"PERSON."
    The president of a corporation is a "person," within Comp. Laws, 4804, declaring that any person, agent, manager, or clerk of a corporation, with whom any money shall be deposited or instrusted, who shall appropriate it to his own use, shall be guilty of embezzlement.

2. GRAND JURY—NUMBER OF JURORS.
    An indictment, found and returned by at least twelve grand jurors, is valid.

3. EMBEZZLEMENT—ASSETS OF CORPORATIONS—EVIDENCE.
    Where defendant, the president of a corporation, was charged with embezzlement in misappropriating the proceeds of treasury stock sold, it was the duty of the state to prove the legal organization of the corporation, the amount and character of its capital stock, that the money credited to defendant's bank account as the proceeds of the stock sold, was applied in whole or in part to his own use, or to that of another, or that defendand, on demand, had refused to repay the same to the rightful owner.

4. EMBEZZLEMENT—EVIDENCE—SUFFICIENCY.
    In a prosecution against the president of a corporation for embezzlement, evidence *held* insufficient to sustain conviction.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Esmeralda County; *F. P. Langan*, Judge.

Henry Weber was convicted of embezzlement, and he appeals. **Reversed and remanded.**

The facts sufficiently appear in the opinion.

*Thayer & Steele, Bartlett, Thatcher & Gibbons*, and *Cheney, Massey & Price*, for Appellant:

I.   The demurrer to the indictment should have been sustained. To come within the terms of the statute, the defendant must have been either the "agent," "manager," or "clerk" of the alleged corporation. The indictment described him as "president," with nothing more. In the absence of any further description, we say that the indictment does not bring the defendant within the terms of the statute, for the reason that the president, as such, is not necessarily or presumptively either an agent, manager or clerk of the corporation. Generally speaking, it is thoroughly well settled that the

president of a corporation is simply the presiding officer at the meeting of directors. His powers and duties are fixed and established by either the articles of incorporation, or by the by-laws of the company, and sometimes special powers are conferred by resolution of the trustees or directors. In the absence of such powers so conferred, the president is simply the presiding officer. He has no inherent power to represent or contract for the corporation. (2 Cook on Corporations.) This indictment was also insufficient in that it did not advise the defendant in what manner he was connected with, or concerned with, the treasury of the Doctor Mining Company, or with any of the funds of said company, or of any duty devolving on him to do with this money, either as directed by Hooper, or by the corporation.

II.  The third, fourth, and fifth assignments of error raise the question of variance and failure of proof. The indictment charges that Weber was intrusted with $10,000, "lawful money of the United States." Upon the trial, in support of this allegation, a personal check of Mr. Hooper was offered. The question of variance was raised, and, during the discussion, the state's attorney said: "Of course, if it is not followed up by showing that the money was there to meet the check, and received by the defendant, why this objection would come properly at the conclusion of the testimony." And, further on, he also said: "We offer to connect it and follow it up by showing that this check was regularly deposited to the credit of Henry Weber, and that he received the money from the check to his credit." We maintain that the variance was material and fatal irrespective of such offers of proof, and also that there was an utter failure to present any testimony which might overcome the variance along the lines suggested by the state's attorney.

III.  As a general proposition the money or property should be described (in embezzlement) with the same certainty as in an indictment for larceny, and if there has been a change in form of the property between the time of receipt and the time of embezzlement it should be described as of the form at the time of the embezzlement. (1 McLain, Crim. Law, sec. 652; 1 Bishop, New Crim. Proc. sec. 486, p. 304; 1 Greenl. Ev. sec.

65, p. 103; 1 Whart. Crim. Law, sec. 1044.) Before embezzlement can be established it must be proven beyond a reasonable doubt that the defendant either applied the money to his own private use, or refused to deliver the same to the rightful owner upon demand. There is no showing in the evidence that defendant either applied the money to his own use or refused to account for the same upon the demand of the Doctor Mining Company. No demand for the return of the money or that it be deposited in the treasury of the so-called Doctor Mining Company was shown, nor was any attempt made to prove a demand upon defendant.

IV. The original possession of the check or money by the defendant was lawful. Indeed, if that be not true, the state's case fails, for the very definition of embezzlement involves the proposition that the original possession of the thing alleged to have been embezzled by the accused was lawful. Where there is no proof that the money alleged to have been embezzled by the accused was misappropriated by him, a demand for the money and a refusal to deliver the same on account thereof must first be shown before embezzlment can be established. A reference to the decided cases and elementary principles of law will establish the principle for which we here contend. The precise question involved in this case came before the Supreme Court of California in the case of *People* v. *Royce*, 39 Pac. 254.

V. The principal error in the instructions to which we wish to call the court's attention is that they assume as a fact that the Doctor Mining Company is a corporation. In each instruction, reiterated again and again, the jury is told that the Doctor Mining Company .is a corporation. Every time the Doctor Mining Company is mentioned there immediately follows the word "corporation." Nowhere in these instructions is the jury told that they must find whether or not such was the fact, but the court takes that fact for granted, and charges the jury accordingly. In order that these instructions accord with law it was necessary that the word "corporation" be followed by some language as this: "If you find from the evidence that it was a corporation." The jury is constantly told that the Doctor Mining Company is a corporation, not

that the jury is to find from the evidence whether or not it was a corporation. Proof as to this point was essential, and the constant reiteration by the court in its own instructions that the Doctor Mining Company was a corporation necessarily removed from the jurors' minds all consideration of this vital point. These instructions told the jury as a fact that the Doctor Mining Company was a corporation, and therein the lower court invaded the province of the jury and violated the Constitution of the State of Nevada. Section 12, article VI, of our Constitution provides as follows: "Judges shall not charge juries in respect to matters of fact, but may state the testimony and declare the law."

*R. C. Stoddard,* Attorney-General, and *A. H. Swallow,* District Attorney, for Respondent:

I. Particular attention is called to the first two words of the statute (Comp. Laws, 4804) "any person." The statute does not require that the party intrusted with the funds should be an agent of the party for whose account the same were deposited. Neither does the indictment allege that the defendant was the agent of the Doctor Mining Company. The allegation that the money was intrusted to him as the president of the corporation is not an allegation that he received it as an agent, but is simply a statement of the facts necessary to show that defendant received the money in a fiduciary capacity for the benefit of another, and not as his own money. It would have been no different under our statute if the defendant had been the janitor of the corporation, and had it been so alleged, certainly he still would come within the description "any person."

II. The gist of the offense is not whether the corporation had an existence *de jure,* or whether or not the defendant had a legal right to receive the money. It is, Did the defendant receive the money from the prosecuting witness for the purpose of paying it over to the use and benefit of a corporation which he represented did exist? Did he afterward appropriate that money to his own use, or to any other person? Did he use it for the purpose for which it was intrusted to him?

By the Court, NORCROSS, C. J.:

Appellant was tried and convicted of the crime of embezzlement in the First Judicial District Court in and for the County of Esmeralda, upon an indictment, the body of which reads as follows: "The said defendant, Henry Weber, on the 4th day of March, A. D. 1907, or thereabouts, and before the finding of this indictment, at the County of Esmeralda, State of Nevada, was then and there the president of the Doctor Mining Company, a corporation, and as such president of said corporation was then and there intrusted by Thomas Hooper with $10,000, lawful money of the United States, property of the Doctor Mining Company, a corporation, for the use and benefit of the said Doctor Mining Company, a corporation, and to be by him, the said Henry Weber, then and there deposited in and paid to the treasury of the Doctor Mining Company, a corporation, and the said Henry Weber did then and there convert and appropriate to his own use the said sum of $10,000, lawful money of the United States, property of said corporation, and all thereof, and did then and there fail, and has ever since failed, to deposit or pay the said sum of $10,000, or any part thereof, in the treasury of the said Doctor Mining Company, a corporation, all of which is contrary to the form, force, and effect of the statute," etc. From the judgment of conviction, and from an order denying his motion for a new trial, the defendant, Henry Weber, appeals.

1. It is contended by appellant, first, that the indictment fails to charge a public offense. The indictment was found under the provisions of section 1 of an act entitled "An act to further define and punish embezzlement" (Stats. 1887, p. 81, c. 76; Comp. Laws, 4804), which reads: "Any person, or any agent, manager or clerk of any person, corporation, association or partnership with whom any money, property or effects shall have been deposited or intrusted, who shall use or appropriate such money, property or effects or any part thereof in any manner or for any other purpose than that for which the same was deposited or intrusted, shall be guilty of embezzlement." It has been urged that, as the indictment simply describes the defendant as the president of the corporation,

he is not therefore an "agent," "manager," or "clerk" of such corporation within the meaning of the statute. It may be conceded, as contended, that the receiving and depositing of money on behalf of a corporation are not within the ordinary duties of the president of such corporation, nevertheless the president of a corporation is a "person"; and, if he does receive and accept money, property or effects of such corporation for and on its behalf, and for the purpose of depositing the same in the corporation treasury, and converts or appropriates such money, property, or effects to his own use, he is guilty of embezzlement under the provisions of the statute. The demurrer was, we think, properly overruled.

2.    A motion to quash the indictment was interposed upon the ground that no more than twelve grand jurors considered and voted upon, or were present when the indictment was returned into court. It is conceded by counsel for appellant that our statute in question was adopted from California, and that prior to its adoption the Supreme Court of California had held that an indictment, found and returned by at least twelve grand jurors, was valid. No contention is made that we ought now hold to the contrary, doubtless because no reason therefor suggests itself. (*People* v. *Roberts*, 6 Cal. 214; *People* v. *Hunter*, 54 Cal. 65.) See, also, *State* v. *Williams*, 31 Nev. 360.

3.    The most serious contention upon the part of the appellant is that the evidence does not justify the verdict, and in this contention we agree. Thomas H. Hooper, upon the part of the state, testified that about the date mentioned in the indictment the defendant made a proposition to him to sell to him 100,000 shares of treasury stock of the Doctor Mining Company at 20 cents a share. Upon the payment of $20,000 for such stock, defendant was to give him an additional 100,000 shares of "bonus stock." That the money to be paid for the stock was to go into the treasury of the company for development purposes. Hooper further testified that he subsequently learned who the officers of the company were; that Arthur Weber was the treasurer of the company; that he made out a check in the treasurer's favor for $10,000 upon the John S. Cook & Co. Bank of Goldfield for $10,000, deliv-

ered the same to him, and got the treasurer's receipt therefor; that a few days later he made out another check upon the same bank in favor of the defendant as president, the treasurer not being around at the time; that he gave the check either to the defendant or to a Mr. Pattberg, a clerk in defendant's office; that he had the money in the bank at the time to meet the check; that the check was subsequently returned to him in the ordinary course of business marked "Paid"; that he received 200,000 shares of the stock of the Doctor Mining Company. Eugene Pattberg testified that he was a bookkeeper in defendant's office, and a director of the Doctor Mining Company; that on or about the 4th day of March, 1907, he received the check of Thomas H. Hooper for $10,000, made payable to the defendant as president; that he was authorized by defendant to indorse all his checks; that he asked the defendant what to do with this check, and defendant told him to deposit it to defendant's account at John S. Cook & Co.'s Bank, which he did; that he had access to the books of the Doctor Mining Company during this period; that the company kept a stock ledger; that in the early part of May he went to the defendant, and told him "that his stock ledger of the Doctor Mining Company, the way it stood, there was that stock (100,000 shares of Captain Hooper, also some more) charged up to the treasury account, and yet there was no account opened up at the bank"; that defendant then told him that that stock never should have been treasury; that it was a mistake, and "for me to destroy that ledger, and make out a new ledger showing that stock to be personal"; that he tore up the stock ledger and burned it; that he knew from his familiarity with the books and concerns of the Doctor Mining Company that there never was any money in its treasury; that it had no bank account; that the defendant, at the time he told him Captain Hooper was going to bring in $20,000, remarked about the large treasury the Doctor Company would have for development purposes; that at the time he deposited the check, he asked defendant if he should order a check book, and defendant said "Yes," and that he ordered it at the bank in the name of the Doctor Mining Company. D. H. Kehoe testified that he attended a meeting of the board

of directors of the Doctor Mining Company, being employed
so to do as the attorney for Captain Hooper and his people;
that at such meeting defendant stated two or three times
there was no money in the treasury, and never had been;
that all of the stock he had sold was personal stock.  C. L.
Hogan, the paying teller in the John S. Cook and Co.'s Bank,
was called as a witness upon the part of the state to testify
concerning certain entries in the books of the bank, but, as he
was not the party who made the entries, was not permitted to
testify concerning them.  He testified that the man who did
make the entries was then in the bank.  The foregoing were
all of the witnesses called upon the part of the state, and all
the testimony that might be deemed material.  The defend-
ant in his own behalf testified that he never told Captain
Hooper that he would give to him 100,000 shares of Doctor
Mining Company treasury stock at 20 cents, and upon the
payment of that $20,000 that he would give him 100,000
shares of bonus stock; that he did not at any time ever say
anything about destroying, or directing Eugene Pattberg to
destroy, any book of the Doctor Mining Company.  These
were the only two points upon which the defendant testified,
and he was not cross-examined.

Assuming all of the testimony upon the part of the state to
be true, and it fails in essential particulars to establish the
crime of embezzlement.  There was no direct testimony
offered showing the legal organization of the Doctor Mining
Company, who its officials were, or the amount and character
of its capital stock.  There is, however, testimony admitted
without objection, and, nothing appearing to the contrary,
from which it may be inferred that the Doctor Mining Com-
pany was a corporation; that the defendant was its president;
that Arthur Weber was its treasurer; and that Eugene Patt-
berg was a director.  There is nothing whatever in the evi-
dence showing the amount, if any, of the treasury stock
owned by the corporation, unless we should hold that the
fact that Pattberg told defendant that "his" stock ledger
showed that the 100,000 shares of stock of Captain Hooper,
also some more, was charged up to the treasury account, and
that there was no account opened up at the bank.  Suppose

we assume that we are warranted in inferring that this was the regular stock ledger of the corporation, and not "his" (defendant's) ledger, still there was no showing whatever that the corporation owned any treasury stock against which the stock in question could be charged. If the corporation did not own any stock, then defendant could not sell any belonging to the company, and no proceeds therefrom could belong to the corporation and become the subject of embezzlement. If a person sold stock claiming it to be treasury stock, when in fact he knew he was selling his personal stock, he might be guilty of obtaining money under false pretenses, a matter we are not now called upon to consider, but it is certain he could not be guilty of embezzlement.

But assuming, for the purposes of this case, that the evidence is sufficient to show that the Doctor Mining Company was a corporation, owning at the time in question at least 100,000 shares of treasury stock; that the defendant sold such an amount of treasury stock to Captain Hooper for the agreed price of $20,000, and received from Captain Hooper, on account of such purchase price, his check made in favor of "Henry Weber, Prest. or order," as the check in question was made out; that the defendant gave the check to his agent, who took the same to the bank, and the bank debited the account of Captain Hooper with $10,000, and credited the personal account of the defendant with a like amount—still we have not a case of embezzlement.

The indictment charges the defendant with having been "intrusted by Thomas Hooper with $10,000, lawful money of the United States, property of the Doctor Mining Company." The indictment does not charge, and counsel for the state do not claim, that defendant embezzled the check. The introduction of the check was objected to upon the part of the defendant, and it was offered and admitted in evidence as preliminary to a showing that the money charged as having been embezzled was received upon the check. Conceding that the crediting of $10,000 to the defendant's personal account was, in effect, the receipt of that amount by him, and yet we do not have anything constituting embezzlement. The transaction at the Cook Bank was nothing more than a matter

of bookkeeping. The bank owed Captain Hooper at least $10,000 on open account, and when it received the check, it debited that account and credited defendant's account, thereby assuming to pay the amount in question to the defendant or order upon demand. There is not a particle of testimony that the defendant ever received one dollar of money upon this account, or anything whatever, other than the mere credit to his personal account in the bank. So far as the evidence is concerned, the account may be still there and intact. If we are entitled to indulge in any presumption whatever, it is the presumption that the credit still exists. If this were not the fact, the evidence was at hand for the state to have shown the contrary. The evidence shows that the Doctor Mining Company never had any treasury account. What was done with the first $10,000 which was paid upon the check of Captain Hooper to the treasurer of the company does not appear. So far as we may gather from the evidence, the corporation authorities never determined where, or in what manner, money belonging to its treasury should be paid. The mere depositing of the check to defendant's personal account, especially in the face of a showing that the corporation had not then, and never did have, a regular depository for its money, and that the treasurer of the company was not present at the time, certainly, we think, could not be held to constitute a conversion by the defendant of the money due upon the check. Before the defendant could be legally convicted of embezzlement, it must be proven, beyond a reasonable doubt, that the money credited to his personal account upon the check of Captain Hooper belonged to the Doctor Mining Company, and that the defendant either applied the money so credited to him to his own use, or to some use or purpose other than that for which the same was intrusted to him, or that he refused to deliver it to the rightful owner upon demand. There is no showing in the evidence that the defendant applied the money, or any part of it, to his own use or to any other use whatever, or ever refused to account for the same upon demand of the Doctor Mining Company, its treasurer, or any one else, or that any demand whatever was ever made upon him. See *People* v. *Page*, 116 Cal.

386, 48 Pac. 326; *People* v. *Royce*, 106 Cal. 173, 37 Pac. 630, 39 Pac. 524; *People* v. *Wyman*, 102 Cal. 552, 36 Pac. 932; *Kribs* v. *People*, 82 Ill. 425; *People* v. *Pollock*, 51 Hun, 613, 4 N. Y. Supp. 297; *Robinson* v. *State*, 109 Ga. 564, 35 S. E. 57, 77 Am. St. Rep. 392; *Fitzgerald* v. *State*, 50 N. J. Law, 475, 14 Atl. 746; *State* v. *Reynolds*, 65 N. J. Law, 424, 47 Atl. 644.

The record contains a number of other assignments of error, but the view we have taken upon the insufficiency of the evidence makes it unnecessary to consider them.

The judgment is reversed, and the cause remanded for a new trial.