[No. 2483]

# THE STATE OF NEVADA, RESPONDENT, *v.* DONALD A. ROTHROCK, APPELLANT.

[200 Pac. 525]

1. INDICTMENT AND INFORMATION — OBJECTION TO INDICTMENT WAIVED BY NOT RAISING IT AS PRESCRIBED.

Under Rev. Laws, 7090, 7091, defendant, charged with embezzlement, waived the objection that the names of many of the witnesses examined before the grand jury were not indorsed on the indictment by not raising such objection by motion to set aside the indictment at the time prescribed by statute.

2. GRAND JURY—INDICTMENT NOT VITIATED BY PUBLICATION OF VOTE ON QUESTION OF ITS FINDING.

Indictment for embezzlement was not vitiated, under Rev. Laws, 6374, 7012, 7013, 7031, because a newspaper of general circulation in the county published the vote on the question of the finding of such indictment, the grand jury having made a report of the proceedings before it, including its action on the charges against defendant, wherein it voted unanimously to indict him; the report being a matter of public record.

3. CRIMINAL LAW—INSTRUCTION THAT CERTAIN ACTS MIGHT BE CONSIDERED PRIMA-FACIE EVIDENCE OF GUILT NOT PREJUDICIAL ERROR.

Under the statute authorizing the jury to consider certain acts as prima-facie evidence of the guilt of one charged with crime, in a prosecution for embezzlement, the trial court committed no prejudicial error in giving instructions that certain acts covered by the statute might be considered by the jury as prima-facie evidence of defendant's guilt; such statutes being valid.

4. EMBEZZLEMENT — CORPORATION'S TREASURER, WHO FILLED IN BLANK CHECK FOR MORE THAN AUTHORIZED AND APPROPRIATED THE PROCEEDS, GUILTY OF EMBEZZLEMENT, AND NOT LARCENY.

The secretary and treasurer of a corporation, who received a blank check from its president, with instructions to fill in the check and pay the company's debt of $12, but instead filled in the check for $400, using $64 of the proceeds to pay two debts of the company, and appropriating the rest, was guilty of embezzlement, and not of larceny of a check.

5. CRIMINAL LAW—INSTRUCTION DEALING WITH WEIGHT TO BE GIVEN TESTIMONY OF PARTICULAR WITNESS PROPERLY REFUSED.

In a prosecution for embezzlement, the trial court properly refused to give an instruction dealing with the weight to be given the testimony of a particular witness. A general instruction, applying to all witnesses alike, is the correct practice.

6. CRIMINAL LAW—TELEGRAM ADMISSIBLE AFTER ANSWERING TELEGRAM ADMITTED.

In a prosecution of a corporation's treasurer for embezzlement of the proceeds of a blank check given him by the president and filled in by him for more than authorized, a telegram, sent jointly by defendant and others, and tending to negative the theory of flight because disclosing defendant's whereabouts, *held* admissible in evidence as against the objection of lack of authenticity, after the answering telegram had been admitted in evidence.

7. CRIMINAL LAW—EXCLUSION OF TELEGRAM, NEGATIVING FLIGHT, PREJUDICIAL.

In the prosecution of a corporation's treasurer for embezzlement of the proceeds of a blank check given him by the president and filled in by him for more than authorized, the exclusion of a telegram sent jointly by defendant and others, tending to negative the theory of defendant's flight, because disclosing his whereabouts, *held* prejudicial error.

8. EMBEZZLEMENT—INSTRUCTION SPECIFYING FACTS OF OFFENSE PROPER.

In a prosecution for embezzlement of the proceeds of a blank check filled out by defendant treasurer for more than authorized, instruction that it must appear from the evidence that defendant appropriated the money in question as alleged in the indictment, or $50 or more of it, to his own use, with intent to steal, etc., *held* proper.

APPEAL from Second Judicial District Court, Washoe County; *C. J. McFadden,* Judge.

Donald A. Rothrock was convicted of embezzlement, and from the judgment, and an order denying his motion for a new trial, he appeals. **Judgment reversed, and case remanded for further proceedings. Petition for rehearing denied.**

*W. D. Jones, .Geo. B. Thatcher, Eugene L. Williams, J. M. Frame, James T. Boyd,* and *Edward T. Patrick,* for Appellant:

Not having been found according to law, the indictment should have been, on defendant's motion, set aside. The names of many witnesses before the grand jury were not indorsed on the indictment. Rev. Laws, 7045; State v. Hamilton, 13 Nev. 388; Rev. Laws, 7012, 7013, 7031. Irreparable injury was done appellant by the

overruling of his motion, and compelling him to go to trial. State v. Hamilton, supra; State v. Benney, 64 Me. 284; 1 Greenleaf on Evidence, sec. 252.

Appellant did not appropriate any part of the money, as charged in the indictment. "It is necessary to prove that he had  *  *  *  fraudulently converted to his own use the money alleged to have been embezzled." People v. Wyman, 102 Cal. 555; Stallings v. State, 63 S. W. 127; State v. Marco, 50 Pac. 799; State v. Weber, 31 Nev. 387; People v. Parkhurst, 12 N. W. 894; People v. Gallagher, 33 Pac. 893; McAleer v. State, 64 N. W. 358.

There was fatal error in respect to the variance between the allegation of the indictment and the proof admitted. "Proof of the embezzlement or larceny of a check will not support a charge of embezzlement or larceny of money." People v. Mesores, 116 Pac. 679; State v. Hanley, 70 Conn. 265; Carr v. State, 104 Ala. 43; State v. Mispagel, 207 Mo. 557; Lancaster v. State, 9 Tex. App. 393; State v. Harcombe, 48 Utah, 89; State v. Castleton, 255 Mo. 201; 7 Ency. Pl. & Pr. 451. "Where an offense charged and that proven are essentially different in their ingredients the variance is fatal, because in criminal proceedings it is necessary that the defendant be fully apprised of the specific charge which he is to answer." 22 Ency. Pl. & Pr. 568; Huntsman v. State, 12 Tex. App. 619; People v. Dumar, 106 N. Y. 502; Commonwealth v. Simpson, 50 Mass. 138; State v. Finnegan, 127 Iowa, 286; 2 Wharton, Crim. Law, 1314; Ex Parte Dela, 25 Nev. 352.

The motives and intent of appellant were not fraudulent. It was prejudicial error to exclude the telegram offered by defendant. Any evidence tending to throw light upon the question of either motive or intent is admissible. 1 Greenleaf on Evidence, secs. 108, 110; People v. Gallaud, 55 Mich. 628; People v. Hurst, 62 Mich. 276; State v. Summers, 141 N. C. 841; State v. Eastman, 62 Kan. 353; State v. Pittarn, 32 Wash. 137; Robinson v. State, 77 Am. St. Rep. 392; People v. Treadwell, 69 Cal. 226; People v. Gray, 66 Cal. 271.

There is no evidence of a felonious conversion, nor is there any evidence that a demand was ever made upon the defendant for the money, which he refused to comply with. State v. Weber, 31 Nev. 385; People v. Royce, 37 Pac. 630; 39 Pac. 524; People v. Wyman, supra; People v. Page, 116 Cal. 386; Kribs v. People, 82 Ill. 425; People v. Pollack, 4 N. Y. S. 297; Robinson v. State, 35 S. E. 57; Fitzgerald v. State, 14 Atl. 746; State v. Reynolds, 47 Atl. 644; State v. Hunnicut, 34 Ark. 562; State v. Flourney, 16 South. 938; Blake v. State, 160 Pac. 30.

It was error to instruct the jury that certain facts should be prima-facie evidence of guilt of embezzlement. State v. Pappas, 39 Nev. 40; Kirk v. Territory, 10 Okla. 803; Abbott's Criminal Brief, sec. 785; People v. Baker, 96 N. Y. 340; People v. Plath, 100 N. Y. 590; Cummings v. Missouri, 4 Wall. 328; State v. Beswick, 13 R. I. 211; Wynehamer v. People, 13 N. Y. 446; People v. Lyon, 27 Hun, 180.

*L. B. Fowler,* Attorney-General; *Robert Richards,* Deputy Attorney-General; *L. D. Summerfield,* District Attorney, and *W. M. Kearney,* Assistant District Attorney, for Respondent:

Documentary evidence does not fall within the meaning of a witness, under the statute. Rev. Laws, 7045; 1 Greenleaf on Evidence, secs. 98, 328; Bouvier's Law Dict. 3475. Even if it were necessary to list the documentary evidence upon an indictment, the objections in the case at bar come too late. By going to trial, and objecting only after the documents were offered in evidence, defendant waived his rights, if any he had, in this respect. People v. Lopez, 26 Cal. 113.

There was no error in the refusal of the court to set aside the indictment on the ground that the grand jury had made public the vote in finding the indictment. Commonwealth v. Meade, 12 Gray, 167; People v. Young, 31 Cal. 564.

Whether or not there has been a conversion to one's

own use in a particular instance depends upon the intent
of the taker. This, as in other criminal cases, is to be
determined by the jury from the attending facts and
circumstances. State v. Baumhager, 28 Minn. 226; 20
C. J. 433, 9 R. C. L. 1279. "It is not necessary for the
state to show what becomes of the money after it is
embezzled." 9 R. C. L. 1276; Eggleston v. State, 129
Ala. 80.

"If the check or other evidence of indebtedness was
merely the means by which the money alleged to have
been embezzled was procured, there is no variance."
20 C. J. 478; People v. Crane, 34 Cal. App. 599; State
v. Brooks, 85 Iowa, 366; Richburger v. State, 90 Miss.
806; State v. McCawley, 180 S. W. 869; Territory v.
Hale, 13 N. M. 181; State v. Chapin, 74 Or. 346; Powell
v. State, 198 S. W. 317; State v. Hopkins, 56 Vt. 250;
Prinslow v. State, 140 Wis. 131.

"A telegram, like a letter, is not admissible in the
absence of proof of its authenticity, either in proof of
the handwriting, where the original message is offered,
or by other evidence of its genuineness." 22 C. J. 907.
It is necessary that the identity of the sender be estab-
lished before a telegram is admitted in evidence. "There
was no evidence of authorship by the insured, or that
she was the sender of the message." Ikenberry v.
Insurance Co., 134 Minn. 432.

There was no necessity for a demand for an account-
ing. "It is only when other evidence to prove a fraudu-
lent conversion is not available that the proof of a
demand is necessary." 9 R. C. L. 1276. There is no
statute requiring a demand as a condition precedent to
a prosecution for embezzlement. State v. Weber, 31
Nev. 385.

No demand is required where the accused has resorted
to flight. People v. Fisher, 16 Cal. App. 271; Kossa-
kowski v. People, 117 Ill. 563; Agar v. State, 176 Ind.
234; People v. Carter, 122 Mich. 668; State v. Knowles,
185 Mo. 141; State v. Reynolds, 65 N. J. L. 424.

Neither an intention to make good the amount embezzled, at the time of the conversion, nor an actual replacement of the amount after conversion, will constitute a defense.  20 C. J. 437, 455; 9 R. C. L. 1298; State v. Trolson, 21 Nev. 419.

There was no error in the instructions.  The whole charge must be taken together and considered as an entirety.  If anything essential, omitted from an instruction or portion of the charge, be found in another instruction, the omission will not be fatal.  State v. Pritchard, 15 Nev. 74;  Solen v. Railway Co., 13 Nev. 106;  Allison v. Hagen, 12 Nev. 38;  State v. Raymond, 11 Nev. 98;  State v. Donovan, 10 Nev. 36;  Caples v. Railway Co., 6 Nev. 265.

The statutory provisions making certain facts primafacie evidence of the existence of the main fact are not unconstitutional.  8 R. C. L. 177.  "The legislature * * * may declare what shall be prima-facie evidence, and may regulate the burden of proof."  It is within the province of the legislature to prescribe rules of evidence.  State v. Thomas, 144 Ala. 77;  Wooten v. State, 24 Fla. 335;  Meadowcroft v. People, 163 Ill. 56;  State v. Beach, 147 Ind. 74;  Commonwealth v. Anselvich, 186 Mass. 376;  People v. Cannon, 139 N. Y. 32;  State v. Barrett, 138 N. C. 630.  "The law presumes that such was defendant's intention, and throws upon him the burden of showing facts in mitigation, justification, or excuse."  State v. Pappas, 39 Nev. 40.

It was for the jury to determine, as a matter of fact, whether or not there was a flight on the part of appellant.  Bird v. U. S., 187 U. S. 186;  Campbell v. U. S., 221 Fed. 186;  Ware v. State, 12 Ala. 101;  People v. Easton, 148 Cal. 50;  Hudson v. State, 101 Ga. 520;  State v. Matheson, 120 Iowa, 440;  State v. Harrington, 86 U. S. 713;  State v. Stentz, 33 Wash. 444.

"There must be an end to the giving of instructions, and the tendency of courts is to give too many."  State v. Ward, 19 Nev. 297.

The crime of embezzlement was clearly established and by evidence more ample than that adduced in most of the adjudicated cases on the subject. No error was committed by the lower court, at least of the character necessary to reverse the judgment. "No judgment shall be set aside, or new trial granted, * * * unless * * * it shall appear that the error complained of has resulted in a miscarriage of justice, or has actually prejudiced the defendant in respect to a substantial right." Rev. Laws, 7469.

By the Court, COLEMAN, J.:

The defendant was indicted upon a charge of embezzlement, and, having been convicted at the trial, appeals from the order denying his motion for a new trial, and from the judgment.

The charging part of the indictment is in the following language:

"That said defendant, on the 28th day of May, A. D. 1920, or thereabouts, and before the finding of this indictment, at and within the county of Washoe, State of Nevada, committed the crime of embezzlement. That at the time and place aforesaid the above-named defendant was secretary and treasurer of Greek Hills Trimetal Company, Inc., a corporation then and there organized and existing under and by virtue of the laws of the State of Nevada, and by reason of his being secretary and treasurer of said Greek Hills Trimetal Company, Inc., was then and there intrusted with and had given unto his possession by said Greek Hills Trimetal Company, Inc., the owner thereof, four hundred ($400) dollars, lawful money of the United States of America, for the sole and only purpose of holding and keeping the said four hundred ($400) dollars in his possession, as said secretary and treasurer of said Greek Hills Trimetal Company, Inc., and expending the same, as said secretary and treasurer of said Greek Hills Trimetal Company, Inc., in payment of claims against the said Greek Hills Trimetal Company, Inc., when duly

and regularly authorized and allowed by said Greek Hills Trimetal Company, Inc., and that said defendant did then and there, while intrusted by said Greek Hills Trimetal Company, Inc., as secretary and treasurer of said Greek Hills Trimetal Company, Inc., with the said four hundred ($400) dollars as aforesaid, and while in the possession thereof as aforesaid, for the uses and purposes aforesaid, wilfully, unlawfully, fraudulently, and feloniously convert the said four hundred ($400) dollars, lawful money of the United States of America, to his own use, with the intent then and there to steal the same and to defraud the said Greek Hills Trimetal Company, Inc., the owner thereof, of the same."

It is admitted that the defendant was the treasurer of the company mentioned on May 28, 1920, and that on that day he had in his possession a blank check of said company, duly signed by the president, with instructions to ascertain the amount of a certain indebtedness of the company, which was $12, to fill in the amount of said indebtedness as the sum for which said check should be made payable, to sign the same as treasurer, and then to pay said indebtedness, but that instead of doing as instructed he made the check payable to himself for $400, got the money thereon, and paid two claims against the company, aggregating $64. Further details will appear in the opinion.

1. The first contention made in behalf of the defendant is that the names of many of the witnesses who were examined before the grand jury were not indorsed upon the indictment, as required by section 7045, Revised Laws 1912. Section 7090 of the Revised Laws provides that such an objection must be made by motion to set aside the indictment. This was not done. Section 7091 provides where such objection is not made in the manner mentioned, a defendant is precluded from thereafter urging the point. People v. Lopez, 26 Cal. 113. The defendant waived the point by not raising it at the time prescribed by the statute.

2. It is next contended that the trial court erred in

refusing to set aside the indictment upon the ground
that the grand jury which returned it caused to be pub-
lished in a daily newspaper, of general circulation in
the county in which the defendant was indicted, the
vote upon the question of the finding of said indictment.
In support of this contention our attention is directed
to sections 6374, 7012, 7013, and 7031 of the Revised
Laws. The facts are that the grand jury made a report
of the proceedings had before it, among which was its
action upon the charges against this defendant, wherein
it voted unanimously to indict him. This report was a
matter of public record in the clerk's office, and the
newspaper published it. The provisions of our statutes
relative to keeping secret the proceedings before the
grand jury were not enacted for the benefit of those who
were investigated and indicted by the grand jury, but
for the protection of the public. This idea is clearly set
forth by the Supreme Court of Massachusetts in Com-
monwealth v. Mead, 12 Gray, 167, 71 Am. Dec. 741,
where it is said:

"The reasons on which the sanction of secrecy which
the common law gives to proceedings before grand
juries is founded are said in the books to be threefold.
One is that the utmost freedom of disclosure of alleged
crimes and offenses by prosecutors may be secured. A
second is that perjury and subornation of perjury may
be prevented by withholding the knowledge of facts
testified to before the grand jury, which, if known, it
would be for the interest of the accused or their con-
federates to attempt to disprove by procuring false
testimony. The third is to conceal the fact that an
indictment is found against a party, in order to avoid
the danger that he may escape and elude arrest upon
it, before the presentment is made. * * * But when
these purposes are accomplished, the necessity and
expediency of retaining the seal of secrecy are at an
end. 'Cessante ratione, cessat regula.' "

Dwelling upon the same question, it is said by the

Supreme Court of California in People v. Young, 31 Cal. 564:

"If the witnesses violated the obligation of secrecy imposed by them by the two hundred and seventeenth section, the defendant could not take advantage of it. The obligation is due and owing to the public, and not to the witness, and therefore its violation cannot be an occasion of offense to him."

We fully approve of the views expressed in the opinions mentioned.

3. It is contended that the court committed prejudicial error in giving two instructions to the effect that certain facts might be considered by the jury as prima-facie evidence of the guilt of the defendant. These instructions were given pursuant to statute, authorizing the jury to consider certain acts as prima-facie evidence of the guilt of one charged with crime. In support of the contention, our attention is ·directed to the case of State v. Beswick, 13 R. I. 211, 43 Am. Rep. 26; and State v. Liquors and Vessels, 80 Me. 57, 12 Atl. 794. These decisions sustain the contention, but we are of the opinion that the contrary rule is supported by both the great weight of authority and by sound reasoning. In R. C. L., vol. 8, p. 177, it is said:

"In many jurisdictions, statutes have been enacted which provide that when certain facts have been proved they shall be prima-facie evidence of the existence of the main fact in question. The validity of such acts has been questioned many times, but usually they have been held to be a proper exercise of legislative power. * * * The inference of the existence of the main fact because of the existence of the fact actually proved, must not be merely and purely arbitrary, or wholly unreasonable, unnatural, or extraordinary. But so long as the legislature, in prescribing rules of evidence, in either civil or criminal cases, leaves a party fair opportunity to make his defense and to submit all the facts to the jury, to be

weighed on evidence legitimately bearing upon them, it is difficult to perceive how its acts can be assailed upon constitutional grounds."

The same rule is stated in 12 C. J. 823, in the following language:

"Likewise, the legislature has power to give to evidence greater effect than it possesses at common law, and in both civil and criminal proceedings it may declare what shall be prima-facie evidence, and may regulate the burden of proof."

See, also, State v. Thomas, 144 Ala. 77, 40 South. 271, 2 L. R. A. (N. S.) 1011, 113 Am. St. Rep. 17, 6 Ann. Cas. 747; Wooten v. State, 24 Fla. 335, 5 South. 39, 1 L. R. A. 819; Meadowcroft v. People, 163 Ill. 56, 45 N. E. 991, 35 L. R. A. 176, 54 Am. St. Rep. 447; State v. Beach, 147 Ind. 74, 43 N. E. 949, 46 N. E. 145, 36 L. R. A. 179; Commonwealth v. Anselvich, 186 Mass. 376, 71 N. E. 790, 104 Am. St. Rep. 590; People v. Cannon, 139 N. Y. 32, 34 N. E. 759, 36 Am. St. Rep. 668; State v. Barrett, 138 N. C. 630, 50 S. E. 506, 1 L. R. A. (N. S.) 626.

While this question has never been before us in a criminal case, it was presented in Garson v. Steamboat Canal Co., 43 Nev. 298, 185 Pac. 801, 1119, where we held that no one has a vested right in a rule of evidence, and that the legislature has the undoubted right to prescribe such rules of evidence as may best promote justice. There is nothing in the case of State v. Pappas, 39 Nev. 40, 152 Pac. 571, in conflict with the view stated.

4. It is said that there is a variance between the offense charged and the proof, in that the defendant committed larceny of a check and not embezzlement of money, if he committed any crime. We are not prepared to approve the contention. The blank check came into the hands of the defendant because of his position as secretary and treasurer of the company, and it was through the signing of the check in his official capacity that he was enabled to get the $400. The money, when it got into his possession, was clearly the property of

the company.   Upon no theory could it be said to have
been the property of the defendant.  A person occupy-
ing a position of confidence and trust cannot use that
position for the purpose of obtaining possession of
money, and after succeeding deny that he obtained it
because thereof.   We think the question was settled by
this court in Ex Parte Ricord, 11 Nev. 287, which grew
out of an embezzlement charge against a clerk in a
railroad office, who, having been permitted to make col-
lections of certain demands due the railroad, collected
others which he embezzled.   It was urged in his behalf
that he was not guilty of embezzlement, for the reason
that he had no authority to collect the money embezzled.
The court brushed the contention aside with the obser-
vation that it did not lie in his mouth to say that he had
no authority to collect the money.   A case identical to
the one at bar, except that the misuse of the money was
not controverted therein, is that of People v. Gallagher,
100 Cal. 466, 35 Pac. 80, in which the court said:

"Bishop, in his work on Criminal Law, in commenting
upon Rex v. Snowley, 4 Car. & P. 390, uses the follow-
ing language: 'That when in reason, whenever a man
claims to be a servant while getting into his possession
by force of his claim the property to be embezzled, he
should be held to be such on his trial for embezzlement.
Why should not the rule of estoppel known throughout
the entire civil department of our jurisdiction apply in
the criminal?   If it is applied here, then it settles the
question; for by it, when a man has received a thing
from another under a claim of agency, he cannot turn
around and tell the principal, asking for the thing,
"Sir, I was not your agent in taking it, but a deceiver
and a scoundrel." ' Bishop, Crim. Law (3d ed.) sec. 367.
In the seventh edition of the same work, like language,
with some additions, is used at section 364 of volume 2.
In Ex Parte Hedley, 31 Cal. 109, a case involving the
same question, and in many respects similar to the one
at bar, this court quoted, with marked approval, the
foregoing extract from Bishop, and in an opinion

regarded as conclusive of the question here held that if an agent obtains the money of his principal in the capacity of agent, but in a manner not authorized, and converts the same to his own use, with intent, etc., it is money received 'in the course of his employment' as agent."

See, also, Smith v. State, 53 Tex. Cr. R. 117, 109 S. W. 118, 17 L. R. A. (N. S.) 531, and note, 15 Ann. Cas. 435.

It is contended that the court erred in refusing to give a requested instruction to the effect that if the defendant "properly accounted" for the money he should be found not guilty. We fail to see any force in this contention. Whether the defendant properly accounted for the money was not a question of fact, but a question of law. The fact is that he deposited the money to the company's account about June 30, after his return, and after the crime had been committed, if any was committed. If he had committed a crime his remorse, repentance and restoration of the money could not wipe it out. 20 C. J. 455; 9 R. C. L. 1298.

5. It is urged that the court erred in refusing to give an instruction dealing with the weight to be given the testimony of a particular witness. A general instruction was given, informing the jury as to the rule whereby they were to arrive at an estimate of the credibility of the various witnesses who testified in the case. It is unwise for the court to single out a particular witness, and give an instruction as to the tests to be applied by the jury in determining the weight to be given his evidence. To give a general instruction applying to all witnesses alike is the correct practice. The court did not err in refusing to give the particular instruction.

6. It is contended that the court erred in refusing to admit in evidence a telegram from Omaha, Neb., of date June 5, sent to Connelly jointly by Mr. Young, manager of the company, one Davies, in some way connected with it, and the defendant. This telegram was offered in evidence after Connelly had admitted on the witness

stand that he had received it. An objection was made by the state to its admission, upon the ground of lack of authenticity. Upon the record as it then stood, we are not prepared to say that the court erred; but thereafter a telegram of June 6, signed by Connelly, directed to the senders of the telegram of June 5, and in reply thereto was offered in evidence. After this telegram had been admitted in evidence, the defendant renewed his offer of the telegram of June 5, which offer was again rejected by the court. We are of the opinion that the court erred in its ruling upon this last offer. Connelly having acted upon the telegram of June 5 as genuine, there was no occasion for showing its authenticity. 22 C. J. 908. The court having erred, we must determine whether the error was prejudicial. Whether or not there is evidence in the case upon which to base an instruction as to flight is doubtful. But, assuming that there is, unless flight is shown so clearly that it cannot be said that by any possibility could the defendant have been prejudiced, it is our duty to reverse the judgment, unless his guilt is so satisfactorily shown that it can be said that the jury could have reached no other conclusion.

The evidence shows that the defendant, though authorized to fill out the check for only $12, on May 28 filled it out for $400, payable to himself, and procured that amount on it, paying therefrom two claims against the company, aggregating $64. It is also shown that on June 2 the president of the company made an appointment with the defendant to meet him the next day to draw checks upon the company's bank account to pay the men who had been employed upon the property of the company. That night the defendant was married, and some time during the night, or the following day, left Reno, and was next heard from at Omaha, Neb., from which place the telegram of June 5 was sent, which was followed on the two following days by letters signed by Young, Davies, and the defendant.

In determining whether or not such a strong showing of flight was made out as to justify us in saying that the defendant was not prejudiced by the rejection of the offer of the telegram, we are justified in considering the evidence in support of the proof of the crime charged; for, if the evidence of that is questionable, we must assume that the ruling was prejudicial. In considering this question, we must also keep in mind that it was the theory of the defense that the defendant went away on business. Connelly, the president of the company, testified that after the defendant had gone away he examined the bank account and found it several hundred dollars short. Neither he nor any other witness testified that the defendant had been directed to pay out for the company the balance of the $400, or that a demand had been made therefor. The state having alleged that the defendant had come into possession of the $400 lawfully, and having urged that he should be estopped from saying that he had not, it would seem that the state should be estopped from relying upon any evidence to the contrary to make out or sustain its case. Having held that the defendant is so estopped, we must also hold that no evidence of the shortage of the bank account can be considered by us in determining whether the defendant was guilty of embezzlement. For the purposes of this case, the defendant came into the possession of the money rightfully, and the shortage of the bank account is more than immaterial.

Let us assume that the check did not enter into the case at all. Suppose $400 in cash had been deposited with the defendant by the company, to be paid out when directed; that he paid out in fact on behalf of the company $64; that he had not been directed to pay out any further sum; that no demand had been made upon him for the balance; that he had failed to keep an appointment to draw checks upon the bank account of the company to pay its debts, but instead had left for Omaha, or some unstated destination—could it be said

that there would be any evidence whatsoever upon which to base an instruction on flight? We think not.

The condition of the bank account being immaterial, the failure of the defendant to keep the appointment to sign the checks cannot be attributed, in law, to its shortage. The question is, then: What evidence is there in the record to show embezzlement? The money having been deposited with defendant for an indefinite time for a special purpose, and he not having been directed to use it for the purpose deposited, and no demand having been made upon him therefor, there must have been some evidence of his use of the money in a manner prohibited by the statute. There is no direct evidence of that fact, and a reliance to sustain that contention must rest largely upon the circumstance to which we have alluded, namely, the failure to keep the appointment. But, assuming that facts as recited did justify submitting the question to a jury, can we say that the defendant was not prejudiced by the court's rejecting the telegram offered in evidence?

7. Flight must follow the commission of a crime. "Flight" signifies something more than a mere going away. It embodies the idea of going away with a consciousness of guilt, for the purpose of avoiding arrest. 16 C. J. 551, 552. In determining whether or not such was the purpose of the defendant, in view of the fact that it was the theory of the defense that he had gone away on account of business, he was entitled to have the jury consider the telegram of June 5, disclosing his whereabouts. The jury might have been convinced that the defendant's disclosure of his whereabouts by telegram so soon after going away indicated that he had no thought of concealing himself for the purpose of avoiding arrest. Under all the circumstances, the defendant was entitled to have the jury consider the telegram in question, and the refusal of the court to admit it in evidence was prejudicial error, warranting a reversal of the judgment. In this connection, the query arises,

in view of the fact that it was the theory of the defense that the defendant went away on business, as to whether the court should not have covered that theory in its instruction. State v. Marshall, 115 Mo. 383, 22 S. W. 452.

8. It is also asserted that the court erred in instructing the jury as follows:

"The court instructs the jury that it must appear from the evidence that the defendant appropriated the money in question, as alleged in the indictment, or $50 or more of it, to his own use, with the intent to steal the same and to defraud the Greek Hills Trimetal Company thereof, and those facts must be proved beyond a reasonable doubt. Therefore, if you believe from the evidence, beyond a reasonable doubt, that the defendant, Donald A. Rothrock, was entrusted with and had given into his possession, the sum of money alleged in the indictment, and that it was so entrusted to him and given into his possession, as the secretary and treasurer of the Greek Hills Trimetal Company, for the sole and only purpose of holding and keeping the same, as said secretary and treasurer, in payment of claims against the said Greek Hills Trimetal Company when duly and regularly authorized and allowed, and that, instead of holding and keeping and expending the same as he should have done, he appropriated it, or $50 or more of it, to his own use, with the intent to steal the same and to defraud the Greek Hills Trimetal Company thereof, that fact would constitute the crime of embezzlement as defined by the statute, and you should convict the defendant. The offense of embezzlement consists of two things: The act of taking money, and the intention with which it is taken."

It is said that this instruction fails to cover a material element of embezzlement, namely, a conversion of the money with a fraudulent intent, and that the concluding sentence is contradictory of the rest of the instruction, and hence tended to confuse the jury, and constituted

reversible error, under the rule laid down in State v. Scott, 37 Nev. 420, 142 Pac. 1053. We simply wish to say that, if the first contention is good, there can be nothing to the second; but, if the first contention is without merit, we think the second is equally so. There may be a taking of property with the intention of appropriating it to the taker's own use. On the other hand, there may be an embezzlement without the element of intent entering into it. State v. Trolson, 21 Nev. 419, 32 Pac. 930.

Some other questions are discussed in the brief of appellant, but we think they are substantially disposed of by what we have said.

For the reasons pointed out, it is ordered that the judgment be reversed, and the case remanded for such further proceedings as may be deemed proper.

DUCKER, J.: I concur in the order.

SANDERS, C. J., concurring:

This is an issue upon a plea of not guilty, interposed by appellant, an attorney at law, to an indictment charging him, as secretary and treasurer of a domestic corporation, with the crime of embezzlement, as declared by what I shall designate as the first clause of section 388 of the Crimes and Punishments Act (Rev. Laws, 6653), entitled "Embezzlement by Bailee or Other Person— Bailee Defined." As the case is the first to reach this court for the violation of the provisions of that section in its condensed form, I shall treat the case as a precedent. The section reads as follows:

"Any bailee of any money, goods or property, who shall convert the same to his own use, with the intent to steal the same or to defraud the owner or owners thereof *and any agent, manager or clerk of any person, corporation, association or partnership, or any person, with whom any money, property or effects shall have been deposited or entrusted, who shall use or appropriate such money, property or effects or any part thereof in any*

*manner or for any other purpose than that for which
the same was deposited or entrusted, shall be guilty of
embezzlement,* and shall be punished in the manner
prescribed by law for the stealing or larceny of prop-
erty of the kind and name of the money, goods, property
or effects so taken, converted, stolen, used or appropri-
ated. The term 'bailee,' as used in this section, shall be
construed to include and mean all persons with whom
any money, goods, or property has been deposited, and
all persons to whom any goods or property has been
loaned or hired, and all persons to whom any goods or
property shall be delivered, for any purpose whatso-
ever, and all persons who shall, either as agent, collector,
or servant, be empowered, authorized, or entrusted to
carry, collect, or receive any money, goods or property
of another; and any use of said money, goods, or prop-
erty by any bailee thereof, other than that for which the
same was borrowed, hired, deposited, carried, received,
or collected, shall be prima-facie evidence of conversion
and of intent to steal the same and defraud the owner
or owners thereof."

The history of that portion of the section relative to
"bailee" antedates the organization of the state (Stats.
1861, p. 70), and has undergone two amendments—one
to include conversion by bailee with intent to steal or to
defraud, to define the term "bailee," and to declare con-
version by a bailee to be prima-facie evidence of intent
to steal and defraud (Stats. 1875, p. 99); the other,
with respect to punishment (Stats. 1879, p. 123). In
1887, to further define and punish the crime of embez-
zlement, a supplemental act was adopted to include per-
sons other than bailees (Stats. 1887, p. 81). The com-
missioners appointed in 1912 to revise our criminal law
saw fit to loosely, and without discrimination, throw the
act of 1887 into the section concerning embezzlement by
bailee, by the transposition of terms and the use of con-
junctive words. The italicized portion of the section as
quoted embraces the offense declared by the act of 1887.

The first question to arise is whether the section in its present condensed form declares but one offense, or two separate and distinct offenses. It is my opinion that, while the offenses relate to the same acts, they differ as to the relations in which the persons stand who commit them. A defendant indicted as bailee cannot be convicted of the offense of embezzlement by an agent or any persons standing in that relation, though the offenses are of the same grade and the punishment the same, because of the apparent different relations of the persons and the different elements of the offenses. I am of the opinion that the lawmakers in 1887 considered that the crime of conversion by bailee, notwithstanding the large signification of the term "bailee" as defined, was not sufficiently comprehensive to include that class of persons, criminally inclined, standing in the relation of agent—or "any person" intrusted with money, goods, property, or effects for a particular purpose—hence the necessity for the act of 1887. I assume that the compilers of the law in 1912 found their authority for combining the two offenses in the principle that where offenses are of the same family of crimes or the same species they may be united, and by joining embezzlement by bailee with that of embezzlement by any agent or any person it was intended to make it possible to accuse one of the violation of the several phases of the offense in a single indictment or information; but I do not apprehend that it was intended by the compilers to confound the offenses. It is permissible, under the section in its present form, to include in one indictment or information the several elements of the offenses or characters as distinguished by the statute, provided the different means or ways of committing the act are charged in several separate and distinct counts. I do not think that by the combining of the offenses it was intended to dispense with the rule that, when a statute specifies distinct offenses, different elements, and several classes of persons, the indictment for its violation must be so framed

as to bring the person clearly within the class specified and the phase of the offense alleged to have been committed (1 Wharton's Crim. Proc., 10th ed., sec. 584, p. 740; 8 Standard Ency. p. 220), or that the pleader could, in framing the indictment, overlook the elementary rule that, when an indictment is founded on a statute, all the facts and circumstances which constitute the offense must be laid in the indictment, and it must state all the ingredients which enter into the offense, whether set down in the statute in terms or interpreted into it (2 Bishop's New Crim. Proc., 2d ed., sec. 612, p. 478).

It will be observed that officers of private corporations are nowhere in terms specified in the section. It was considered by the court in State v. Weber, 31 Nev. 385, 103 Pac. 411, that such officers fall within the term "any person," as used in the act of 1887. It is surprising that such a large class should not have been at least named. For the sake of clearness, the compilers should have at least segregated officers of corporations, public or private, in a class by themselves, as has been done in all the other states, and thereby relieve the law of any confusion as to this class of persons.

Coming to the case at bar, I interpret the indictment to mean that the $400 alleged to have been intrusted to the defendant was a mere naked bailment (a depositum), which the defendant held wholly and exclusively for the benefit of the bailor (the corporation). By its averments, he was in the lawful receipt of the money; it was given into his possession by virtue of his office for a particular purpose, to be expended by him in a particular manner. It is averred that while so intrusted, and the money so in his custody, he converted the particular sum of money to his own use, coupled with intent to steal and defraud the corporation, its owner. Though the defendant is not named as "bailee," the indictment sets forth facts which clearly show that the money, at the time it is alleged to have been converted, was held

by him in that capacity. It is true it appears that the defendant converted the money in his capacity as secretary and treasurer of the corporation, but this is merely descriptive of the relation. The jury in this case returned this verdict:

"We, the jury, find the defendant above named, Donald A. Rothrock, guilty as charged."

The clause "guilty as charged" refers, of course, to the indictment for the facts which are specially found in the verdict, and the finding is not to be aided by reference to other facts upon which there was no finding; neither does it supply material omissions in the indictment.

I shall not recapitulate nor comment upon the evidence. But, upon a most careful study of the record, the facts, in my judgment, bring the defendant within that phase of the statute that makes "any person" guilty of embezzlement who shall use or appropriate money, goods, property, or effects intrusted to him for any other purpose than that for which the same was deposited or intrusted. State v. Weber, supra. The offense certainly had its inception in the defendant's culpable act in filling in a blank check under color of his office, which had been previously signed by him as treasurer and countersigned by the president of the corporation, in conformity to the law of the corporation. The funds of the company, under resolutions of its board, were deposited in its name in the Farmers and Merchants National Bank of Reno, Nevada. In order to safeguard its funds, it was resolved by the board that all checks and drafts drawn against the funds of the company should be signed by its treasurer and countersigned by its president. It appears, as stated, that the defendant had in his possession a check thus signed, which at the time of its delivery to him was intended to be filled in by him to meet an obligation of the company for the small sum of $12. But, without the knowledge or consent of the president, defendant filled in the check to himself as

payee for the sum of $400, and withdrew that sum of money from the bank. This act, unexplained, constituted a complete offense, under the second clause of the section—embezzlement by "any person" other than bailee—in that the funds of the company, though deposited in bank in its name, were in a restricted and limited sense under the care and control of the defendant, not, however, as bailee as the term is used in the statute.

The evidence for the state consists mainly in detailing before the jury the animus furandi of the defendant in the withdrawal of the money from the bank for the sole purpose of appropriating it to his own use, with intent to steal and defraud. The jury was instructed that the offense of embezzlement consists of two things—the act of taking money, and the intent with which it is taken. If this be the law of the case, the money was taken unlawfully. The intent to steal and defraud was conceived when the accused filled in the check for $400, and the conversion took place when he withdrew the money from the bank. The legal effect of all this evidence was to prove one charge for the purpose of sustaining some other charge. The defendant may unquestionably be guilty of some offense, but he cannot be convicted of one crime by proof of another, though of the same family. Ex Parte Rickey, 31 Nev. 94, 100 Pac. 134, 135 Am. St. Rep. 651.

The drafter of the indictment might have safely and sufficiently charged the defendant with the misuse and misappropriation of the money intrusted to him as an officer of the corporation in the language of the statute, by the use of a count to meet this phase of the evidence, but in this he failed. According to the indictment, the defendant received the money first bona fide, and then fraudulently converted it, with intent to steal and defraud. This is the crime expressed. Undoubtedly the material distinctions made by the statute escaped the

observation of the pleader, court, and jury. From the proof they may have assumed that the appropriation of the money by means of the fraudulent check, with the animus furandi, might be considered as competent evidence to establish the crime as laid in the indictment.

I do not wish to be understood as holding or saying that proof of one offense under the statute disproves the other. If it did, the offenses would be repugnant, and could not be joined in one indictment. They are not repugnant. State v. Trolson, 21 Nev. 429, 32 Pac. 930. But what I do say is that evidence of a distinct offense, such as that of embezzlement by an officer of a corporation, does not establish the offense of embezzlement by a bailee. I cannot say that, with the evidence of defendant's fraudulent or felonious taking of the money from the bank eliminated from the case, the jury would have rendered the verdict it did.

It is suggested that the proof shows an actual embezzlement, involving one and the same transaction, and, the evidence having gone to the jury without objection, to grant a new trial would countenance a defeat of justice by sacrificing substance to form. The difficulty with the state's position throughout is that it interprets the term "any person," as used in the section, to be a convertible term which applies to all classes of persons— bailees, agents, or any person—who appropriate to their own use the property of another, with or without intent to steal or defraud. This is true under the general definition of embezzlement, and under some statutes such a general charge in an indictment would be sufficient; but not under a statute like ours, which does not define the offense, but simply declares who and under what circumstances the persons specified may be found guilty. I have repeatedly pointed out that under the indictment there was such a delivery of the $400 as to divest the owner of its possession and vest it in the accused. If the prosecution, to convict the defendant, intended to

rely upon evidence of the fraudulent appropriation of the money in the first instance, the indictment should have contained a count to meet the evidence.

It is proper that I should state that I am in accord with the disposition made by Justice COLEMAN of the alleged irregularities complained of up to the trial. I assent to the order granting a new trial solely for the reason that, upon my construction of the statute, my interpretation of the indictment and the evidence, no intelligent judgment can be rendered upon the verdict finding the defendant "guilty as charged."

ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.