STATE, Respondent, vs. KRAUSE, Appellant.

*November 9—December 4, 1951.*

314

316

For the appellant there was a brief by *Sullivan, Sullivan, Wedemeyer & Jennings,* attorneys, and *Eugene J. Sullivan, Dennis M. Sullivan, Ted E. Wedemeyer,* and *David V.*

*Jennings, Jr.,* of counsel, all of Milwaukee, and oral argument by *Dennis M. Sullivan* and *Eugene J. Sullivan.*

For the respondent there was a brief by the *Attorney General, William J. McCauley,* district attorney of Milwaukee county, *Herbert L. Mount,* special assistant district attorney, and *Ben J. Wiener,* assistant district attorney, and oral argument by *Mr. Wiener* and *Mr. William A. Platz,* assistant attorney general.

CURRIE, J. The appellant, Krause, on this appeal raises the following issues:

(1) That certain provisions of the Municipal Court Act for Milwaukee county are unconstitutional.

(2) That a mistrial should have been declared as a result of the privacy and secrecy of the grand jury proceedings not being properly maintained.

(3) That it was error for the prosecutor to mention in the presence of the jury that appellant had been indicted by the grand jury.

(4) That error was committed with respect to the manner in which the witness, Calvano, was induced and permitted to change his testimony and, incidental therewith, to the trial court's refusing defense counsel the right to make use of a transcript of Calvano's testimony given before the grand jury.

(5) That error was committed in the trial court's refusing to give a requested instruction with respect to the uncorroborated testimony of an accomplice.

Sec. 2, art. VII of the Wisconsin constitution provides as follows:

"The judicial power of this state, both as to matters of law and equity, shall be vested in a supreme court, circuit court, courts of probate, and in justices of the peace. The legislature may also vest such jurisdiction as shall be deemed necessary in municipal courts, and shall have power to

establish inferior courts in the several counties, *with limited civil and criminal jurisdiction. Provided, that the jurisdiction which may be vested in municipal courts shall not exceed in their respective municipalities that of circuit courts* in their respective circuits as prescribed in this constitution; . . ."

Sec. 8, art. VII of the constitution provides:

"The circuit courts shall have original jurisdiction in all matters civil and criminal within this state, not excepted in this constitution, *and not hereafter prohibited by law;* . . ."

The Municipal Court Act for Milwaukee county was adopted in 1859, and revised in 1878. By virtue of an amendment in 1895 to the act, exclusive criminal jurisdiction was conferred upon the municipal court in Milwaukee county. The Municipal Court Act as amended provides for the drawing of grand juries by the municipal court, and that "No grand jury shall hereafter be drawn or summoned for the circuit court of Milwaukee county." In 1899, the District Court Act for Milwaukee county was adopted by the legislature, which granted exclusive jurisdiction to the district court over misdemeanors and all offenses arising from Milwaukee county, the punishment whereof does not exceed one year's imprisonment in state prison or county jail, or a fine not exceeding $500, or by both such fine and imprisonment.

The net result of the Municipal Court Act and District Court Act for Milwaukee county is that all grand jury jurisdiction has been taken from the circuit court, and that part of such jurisdiction which extends to crimes which may be punished by imprisonment of more than one year, or by a fine of more than $1,000, has been vested in the municipal court, while the power of grand juries in Milwaukee county to return indictments for lesser offenses (the same being those triable in the district court) has been abolished altogether. Appellant contends this is unconstitu-

tional and cites the cases of *Gianella v. Bigelow* (1897), 96 Wis. 185, 71 N. W. 111, and *Cawker v. Dreutzer* (1928), 197 Wis. 98, 221 N. W. 401, which hold that the legislature has power to take away the jurisdiction of the circuit court in specific cases and confer such jurisdiction on an inferior court where the remedy in the inferior court will be adequate and complete. However, in so abolishing grand jury jurisdiction, the legislature, in the sense used in *Gianella v. Bigelow* and *Cawker v. Dreutzer, supra,* has not deprived anyone of a remedy, because of the existence of sec. 355.12, Stats., which confers upon the courts the same power and jurisdiction to try prosecutions upon information, and to issue processes therein, as such courts possess in prosecutions upon indictment by a grand jury.

Under sec. 8, art. VII of the Wisconsin constitution and the decision in *Rowan v. State* (1872), 30 Wis. 129, the legislature had the right to abolish entirely the grand jury jurisdiction of the circuit court for Milwaukee county. The fact that the legislature, instead of abolishing grand jury jurisdiction in Milwaukee county entirely, retained the same for the more serious crimes, raises no constitutional question, and appellant's contention in this respect is without merit.

Appellant further contends that by reason of all criminal jurisdiction having been taken away from the circuit court for Milwaukee county and vested in the municipal and district courts, sec. 2, art. VII of the Wisconsin constitution has been violated, because the municipal court has criminal jurisdiction which exceeds that of the circuit court. This contention was squarely ruled upon in *Bookhout v. State* (1886), 66 Wis. 415, 418, 28 N. W. 179, in which the court had before it a statute which in effect took away from the circuit court for Dane county jurisdiction in bastardy proceedings and conferred the same upon the municipal court of that county. The court in its opinion said:

"The validity of this act is denied by the learned counsel for the accused on the alleged ground that it contravenes the provisions of sec. 2, art. VII of the constitution of this state. That section gives the legislature authority to vest judicial powers in municipal courts, but provides that the jurisdiction so vested 'shall not exceed in their respective municipalities that of circuit courts in their respective circuits, as prescribed in this constitution.' We do not doubt that when the legislature created the 'municipal court of Dane county' it intended to and did create a *municipal* court, within the meaning of that term as employed in the constitution, as distinguished from an *inferior* court.

"The argument by which the invalidity of the above act is sought to be maintained is that inasmuch as sec. 2515, R. S., practically takes from the circuit court of Dane county jurisdiction in bastardy proceedings, and attempts to confer the same upon the municipal court of that county, it thereby undertakes to give that court jurisdiction in excess of that of the circuit court. This proposition is plausible, yet we do not think the constitutional restriction of jurisdiction is to be taken in any such sense. The jurisdiction of the respective municipal courts is limited to that of the circuit courts in their respective circuits, *as prescribed in the constitution.* The jurisdiction therein prescribed is sufficiently broad and comprehensive to include all special proceedings in their nature judicial. A proceeding in bastardy is a special proceeding of a judicial nature. The constitution confers upon the legislature power to restrict the original jurisdiction of the circuit courts (art. VII, sec. 8); and applying the rule *stare decisis,* it has been held that the appellate jurisdiction of those courts may also be limited by law, by virtue of the same section. *Harrison v. Doyle,* 11 Wis. 283; *McNab v. Noonan,* 28 Wis. 434. But it does not necessarily follow, if the legislature takes from the circuit courts any jurisdiction, either original or appellate, theretofore possessed by them in common with the municipal courts, that the jurisdiction of the latter courts is curtailed to the same extent, or that the legislature may not confer upon municipal courts the jurisdiction thus taken from the circuit courts. The powers of the circuit court may be thus abridged, and that of the municipal courts in the same matters retained or conferred, without infringing the constitutional rule under con-

sideration. The jurisdiction of the municipal courts, in such case, will not exceed that of the circuit courts in their respective circuits, *as prescribed in the constitution,* although it may, in one county, and in a single particular, exceed that prescribed by the statute for the circuit court of that county."

It is a further contention of appellant that the municipal court of Milwaukee county is not a true municipal court within the meaning of sec. 2, art. VII of the Wisconsin constitution, but is an inferior court. We do not feel called upon to pass upon that question in this case because even if it were an inferior court the legislature could nevertheless transfer criminal jurisdiction from the circuit court to an inferior court. In *American Loan & Trust Co. v. Bond* (1895), 91 Wis. 204, 206, 64 N. W. 854, the jurisdiction of the superior court of Douglas county in comparison to the circuit court for that circuit was argued, and the court held:

"Since the legislature is thus expressly authorized to cut down the original jurisdiction of the circuit courts, or any of them, it necessarily follows that it may, if nowhere prohibited by the constitution, vest some of such original jurisdiction in such inferior courts."

In considering these questions of constitutionality, it would seem clear that the appellant cannot raise the question of the unconstitutionality of that part of the Municipal Court Act which deprives the circuit court of grand jury jurisdiction. The legislature had power to confer grand jury jurisdiction upon the municipal court, and appellant was indicted by a grand jury impaneled by that court and sustained no prejudice because the act attempts to deprive the circuit court of grand jury jurisdiction. The portion of the act conferring grand jury jurisdiction upon the municipal court is separable from the portion which deprives the circuit court for Milwaukee county of grand jury jurisdiction, and if the latter be unconstitutional the former is not affected thereby.

The claim is made that a mistrial should have been declared because of alleged failure of the grand jury to maintain the secrecy of its proceedings. The facts upon which such claim is based are as follows: Before the grand jury was assembled, a Milwaukee newspaper published the identity of members of the jury and their pictures and occupations. The names of the witnesses before the grand jury were published, sometimes before they were subpoenaed. Statements appeared in the newspapers made by the foreman and the special prosecutor. Some witnesses, in spite of an admonition not to do so, went out and freely disclosed to newsmen and others the substance of their grand jury testimony. During recess and lunch periods there was an informal mingling of the grand jurors with newspaper reporters and others, and pictures were taken of witnesses, but not when they were in actual appearance before the grand jury. A conference was held in chambers between the municipal judge and the foreman of the grand jury, but a careful transcript was made of everything that there transpired, and appellant's case was not discussed in such conference. Two attorneys employed as special investigators were permitted in the grand jury room during part of the time the jury was in session, assisting the special prosecutors, but these two investigators were never present during the deliberations of the jury when the voting of indictments was under consideration.

It is uniformly held that the injunction of secrecy as to grand jury proceedings is for the benefit of the jurors and the public, and not the one who is indicted by the jury.

In *State v. Bates* (1897), 148 Ind. 610, 612, 48 N. E. 2, the court in its decision stated:

"Though obviously proper, and highly important, that the proceedings of a grand jury should be in secret, one who is indicted cannot take advantage of it if they are not. *Shattuck v. State,* 11 Ind. 473. The secrecy is not required for his benefit,—but otherwise."

In *State v. Rothrock* (1921), 45 Nev. 214, 200 Pac. 525, a motion was made in the lower court to set aside the indictment because the grand jury caused to be published in a daily newspaper the grand jury's vote upon the indictment. In passing upon this, the Nevada supreme court stated (p. 222) :

"The provisions of our statutes relative to keeping secret the proceedings before the grand jury were not enacted for the benefit of those who were investigated and indicted by the grand jury, *but for the protection of the public.* This idea is clearly set forth by the supreme court of Massachusetts in *Commonwealth v. Mead,* 12 Gray, 167, 71 Am. Dec. 741, where it is said:

" 'The reasons on which the sanction of secrecy which the common law gives to proceedings before grand juries is founded are said in the books to be threefold. One is that the utmost freedom of disclosure of alleged crimes and offenses by prosecutors may be secured. A second is that perjury and subornation of perjury may be prevented by withholding the knowledge of facts testified to before the grand jury, which, if known, it would be for the interest of the accused or their confederates to attempt to disprove by procuring false testimony. The third is to conceal the fact that an indictment is found against a party, in order to avoid the danger that he may escape and elude arrest upon it, before the presentment is made. . . . But when these purposes are accomplished, the necessity and expediency of retaining the seal of secrecy are at an end. *"Cessante ratione, cessat regula."* '

"Dwelling upon the same question, it is said by the supreme court of California in *People v. Young,* 31 Cal. 564:

" 'If the witnesses violated the obligation of secrecy imposed by them by the two hundred and seventeenth section, the defendant could not take advantage of it. *The obligation is due and owing to the public, and not to the witness, and therefore its violation cannot be an occasion of offense to him.*' " (Emphasis supplied.)

This court in *Murphy v. State* (1905), 124 Wis. 635, 653, 102 N. W. 1087, sets forth the same quotation from the Massachusetts case of *Commonwealth v. Mead* as is

quoted in *State v. Rothrock, supra,* and then states with respect to the reasons for keeping grand jury proceedings secret:

"All of the reasons practically disappear after the arrest of the accused, when he is put upon his trial in court."

The appellant is also not entitled to claim a mistrial by reason of the fact that the two special investigators were permitted in the grand jury room, during sessions of the jury, because they were not present during the deliberations of the jury when the question of voting on indictments was being considered. The appellant has failed to show that his rights in any way were prejudiced by the presence of such two investigators in the grand jury room. The law on this point is set forth in 24 Am. Jur., Grand Jury, p. 862, sec. 42:

"The cases agree that no person other than jurors should be present when the grand jury is *deliberating or voting upon the advisability of returning an indictment.* One whose conduct is being investigated by a grand jury has no right, constitutional or otherwise, to petition the grand jury or to appear before it. *But there is a decided difference of opinion* as to the effect of the presence of an unauthorized person in the *grand jury room at other times, the majority taking the view that it will not be a sufficient ground for quashing or abating the indictment, unless prejudice is shown or is probable.* Other courts have held that the participation, however small, of an unauthorized person is ground for abatement, regardless of any showing of prejudice." (Emphasis supplied.)

An exhaustive annotation on the subject of the presence in the grand jury room of persons other than grand jurors as affecting an indictment is to be found in 4 A. L. R. (2d) 392. The author in this annotation states (p. 395):

"The prevailing view, apart from statutes expressly affecting the question, is that the presence of an unauthorized person during grand jury proceedings, is, at most, a mere irregularity, not sufficient to constitute a ground for setting

aside the indictment returned by the grand jury, unless prejudice to the accused is shown."

In *State v. Wescott* (1927, 194 Wis. 410, 412, 217 N. W. 283, a plea in abatement was filed on the ground that the statutes had not been complied with in the selection and organization of the grand jury, and this court said:

"*It is well settled that prejudice is no longer presumed from every failure to follow literally the provisions of statutes regulating procedure. He who seeks to overturn judicial action or to quash an indictment against him must go farther than merely to show that error has been committed. He must establish the fact that such error has prejudiced him by affecting his substantial rights. 'Prejudicial error is presumed against, this presumption to prevail till overcome . . . by preponderating inferences of fact.'*" (Emphasis supplied.)

Inasmuch as appellant's case was not discussed in the conference held in chambers between the municipal judge and the foreman of the grand jury, it is clear that the appellant could have sustained no prejudice as a result of such conference.

There was no error committed by the special prosecutor in stating to the petit jury that the appellant had been indicted by the grand jury. Sec. 355.41, Stats., provides as follows:

"The clerk of the court shall, immediately upon the filing of an indictment or information, record the same in the book kept for that purpose in his office, and such record or certified copies therefrom may be read in evidence and shall have the same effect as the originals."

We now come to the contentions raised by the appellant with respect to the proceedings followed at the trial in laying the ground work preliminary to impeaching the witness, Calvano (which impeachment became unnecessary as a result of this witness voluntarily changing his testimony), and the propriety of permitting Calvano to be recalled to

the stand for the purpose of having him correct or change his previous testimony.

Calvano, in his original testimony, testified as to being present at Tutz's Cocktail Bar and hearing part of the conversation which took place there between Borgman and the appellant, Krause, but Calvano consistently refused to admit during direct and cross-examination that he heard any conversation between Borgman and Krause which would indicate a corrupt agreement between the two. He testified that he understood Borgman and Krause were talking about money and that Borgman mentioned having to pay Calvano's fee of $125, and a further sum of $200, which Calvano understood to be the fee for the license, but the witness was very vague in his recollection of that part of the conversation. At the conclusion of Calvano's testimony the prosecutor asked leave of the court to introduce evidence of conflicting statements made under oath by Calvano before the grand jury.

In the absence of the trial jury, the trial court permitted the special prosecutor to call as a witness one Lee Archer, a member of the grand jury, and also its clerk. The court, over objection, then permitted the prosecutor to read to Archer the pertinent parts of Calvano's testimony given at the trial and asked Archer if there were any discrepancies between such testimony and that given by Calvano before the grand jury. Archer stated that he believed that there were some discrepancies. Archer had been previously permitted to refresh his memory as to Calvano's grand jury testimony by examining a transcript thereof in the district attorney's office, and admitted that without so refreshing his memory he could not have pointed out the discrepancies. The state then called the stenographic reporter for the grand jury to the stand, who verified the accuracy of the transcript from which Archer had refreshed his memory. Archer was then recalled and, over objection, was permitted to read questions and answers from the grand jury transcript of the testimony of

Calvano which Archer claimed established discrepancies in the testimony given by Calvano at the trial.

Counsel for appellant did not ask Archer whether there was any additional testimony given by Calvano before the grand jury, other than that read by Archer, bearing on what had transpired in the presence of Calvano at Tutz's Cocktail Bar between Borgman and Krause, nor did counsel for the defendant call any other member of the grand jury and ask any questions with respect to the testimony given by Calvano before the grand jury. Instead, at the conclusion of Archer's testimony, appellant's counsel moved the court for permission to use the transcript of the grand jury testimony of Calvano "throughout the rest of this trial." The state immediately objected to such request and the trial court refused the request.

All of the foregoing took place without the presence of the trial jury. Then, with the jury present, the state recalled Calvano to the stand and, over objection, Calvano was permitted to testify in effect that his memory had been refreshed by hearing Mr. Archer's testimony as to what he had testified to before the grand jury, and admitted that he did hear Borgman say to Krause "I have got to pay you two hundred or two hundred and fifty dollars," and thus corroborated the testimony previously given by Borgman on this point. It is the contention of appellant that it was error to permit Archer to have refreshed his memory from the transcript of the grand jury proceedings, to have permitted Archer to testify to his conclusions of inconsistencies between the statement given by Calvano at the trial and before the grand jury, in refusing appellant's counsel's request to use the transcript of Calvano's testimony before the grand jury to cross-examine Archer, to permit the state to recall Calvano without having the court determine that he was a hostile witness and without the groundwork for impeach-

ment having been laid, and in permitting Calvano to volunteer the statement changing his testimony upon so being recalled.

Sec. 255.27, Stats., provides as follows:

"Members of the grand jury may be required by any court to testify whether the testimony of a witness examined before such jury is consistent with or different from the evidence given by such witness before such court. . . ."

In 7 Encyclopaedia of Evidence, Impeachment of Witnesses, p. 132, it is stated:

"Any person to whom or in whose hearing a witness' variant statements were made, may be called to prove them. So where the statements were made in testifying before a grand jury, a grand juror or other person who heard them may be called to prove them."

Decisions of other jurisdictions are cited in support thereof.

In view of sec. 255.27, Stats., and the above quotation from Encyclopaedia of Evidence, we are of the opinion that the procedure followed by the state in establishing, in the absence of the jury, that Calvano had given inconsistent testimony before the grand jury from that given at the trial by calling Archer as a witness and permitting him to testify as he did, was proper. Archer having no independent recollection of the testimony given before the grand jury, it was proper that he be permitted to refresh his memory from the grand jury transcript, the accuracy of such transcript having been established by the reporter who had recorded the testimony in shorthand. The proper groundwork was thus laid by the state for the impeachment of Calvano, and the next step in such impeachment would be to recall him to the stand in the presence of the jury and ask him if he had not given inconsistent or conflicting testimony before the grand jury. However, when Calvano was recalled to the stand it was unnecessary for the state to take this last step because

he voluntarily changed his testimony to conform with that given before the grand jury. Without any preliminary groundwork of impeachment being laid, it is proper in a criminal trial for a witness, who has previously testified, to be recalled for the purpose of correcting prior testimony given by the witness, which the witness then claims to have been erroneous.

The trial court's refusal to permit defense counsel the right to make use of the transcript of Calvano's grand jury testimony also was proper in view of the prior decisions of this court. The fact that the law permits such grand jury testimony to be available for use by the district attorney, or a special prosecutor employed to assist him, does not extend the same privilege to defense counsel.

In *Steensland v. Hoppmann* (1934), 213 Wis. 593, 599, 252 N. W. 146, the accused demanded the right to inspect the minutes of the grand jury to prepare and make his defense, and this court held that the accused was not entitled to access to such grand jury minutes and stated:

"The general practice adhered to over many years, of limiting the occasions for giving publicity to matters before the grand jury, supports the contention of the state that an inspection of the minutes of such a body is not to be allowed except in the instances provided for by legislation and permitted by the courts when necessary to protect the rights of citizens in the administration of justice. *Report of Grand Jury,* 204 Wis. 409, 235 N. W. 789."

In *Report of Grand Jury* (1931), 204 Wis. 409, 414, 235 N. W. 789, it was stated:

"Publicity of the jury's proceedings is expressly prohibited by custom and by positive legislative enactment. Every means is provided to maintain this privacy that can be and still have a practical method of impeaching witnesses who testify differently in a trial on an indictment from the way they did when before the grand jury."

If counsel for the defense believed that there was other testimony of Calvano given before the grand jury which would explain away the inconsistent testimony, as established by the questions and answers read into the record from the transcript by Archer, counsel had the right under sec. 255.27, Stats., to have asked Archer, or any other member of the grand jury, as to the existence of such other testimony. However, counsel did not elect to proceed in the manner provided by statute, and the trial court was correct in denying counsel's request for permission to be given the use of such grand jury transcript.

The last point raised by appellant is that it was error for the trial court to have refused to have given to the jury the following requested instruction:

"As to the witness, Kenneth E. Borgman, you are instructed he is an accomplice. An accomplice is a witness who is implicated in the crime in which the defendant is charged. The testimony of an accomplice is admissible as evidence. The credibility of an accomplice as a witness is for you, as jurors, to pass upon as you do upon the credibility of all the other witnesses, but, in considering the testimony of an accomplice, it is the duty of the jury to use great care and caution in weighing such evidence, and ordinarily it is considered unsafe to convict a defendant upon the uncorroborated testimony of an accomplice. Such testimony should, therefore, be closely and carefully scrutinized by you, and you should then give the testimony of Kenneth E. Borgman such weight and credit as you believe it entitled to."

The instruction which was given by the trial court with respect to the testimony of an accomplice was as follows:

"One Kenneth Borgman has testified on behalf of the state, and, if his testimony is true, he participated in the commission of the crime charged against the defendant and was an accomplice therein. You are instructed that the evidence of an accomplice is competent in a criminal case upon which to base a verdict of guilty, provided it is of such a character,

taken in connection with all the other evidence in the case, as to satisfy you of the guilt of the defendant beyond a reasonable doubt. But you should examine such evidence with the utmost care and caution, scrutinize it closely and weigh it in the light of all the attendant circumstances as shown by the whole evidence and, if after such scrutiny and consideration it and the other evidence in the case satisfies you of the guilt of the defendant beyond a reasonable doubt you should find the defendant 'Guilty.' If you are not so satisfied you should find him 'Not guilty.' "

A comparison of the instruction given with that requested discloses that the only substantial difference between the two is that the trial court did not instruct the jury that it was unsafe to convict a defendant upon the uncorroborated testimony of an accomplice. The trial court was correct in so refusing to instruct because Borgman's testimony was corroborated by that of Calvano.

*By the Court.*—Judgment affirmed.