STATE, Respondent, v. ALFONSI, Appellant.*

*December 2, 1966—January 10, 1967.*

---

* Motion for rehearing denied, without costs, on February 28, 1967.

470

For the appellant there was a brief and oral argument by *John C. Fritschler, Jr.*, of Madison, attorney, and *Ray T. McCann* of Milwaukee and *Donald C. O'Melia* of Rhinelander of counsel.

For the respondent the cause was argued by *William A. Platz*, assistant attorney general, with whom on the brief were *Bronson C. La Follette*, attorney general, and *Michael B. Torphy, Jr.*, district attorney of Dane county.

A brief *amicus curiae* was filed by *Stewart G. Honeck* of Milwaukee, and *A. W. Langner* of Sheboygan Falls, attorneys, and *Honeck, Mantyh & Arndt* of Milwaukee of counsel, for Willis Hutnik.

GORDON, J.

### Criminal Intent in Bribery.

On a number of occasions this court has had to decide whether guilt under a given statute required a specific criminal state of mind. In the recent case of *State v. Croy* (1966), 32 Wis. (2d) 118, 145 N. W. (2d) 118, the accused was charged under sec. 943.21, Stats., with leaving a hotel without paying his bill. An earlier Wisconsin statute had explicitly required an "intent to defraud," but in the amended statute that phrase was omitted. We stated in the *Croy Case,* at page 122, that notwithstanding the amendment, "the statute requires a specific intention on the part of the wrongdoer so that conviction cannot be had in the absence of an act of fraud." In view of our holding, an accused charged under the new statute would clearly be entitled to an instruction that the state must prove an intent to defraud the innkeeper, even though the words "intent to defraud" are no longer contained in the statute itself.

Other cases in which this court has wrestled with the problem of construing a statute to determine whether *mens rea* was required are *West Allis v. Megna* (1965), 26 Wis. (2d) 545, 548, 133 N. W. (2d) 252, and *Pauly v. Keebler* (1921), 175 Wis. 428, 185 N. W. 554.

The supreme judicial court of Massachusetts in a case decided on November 3, 1966, *Commonwealth v. Corey,* 351 Mass. 331, 221 N. E. (2d) 222, acknowledged that it is "competent for the Legislature to define criminal offenses without any element of scienter;" however, the court also observed that the "existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence."

In the case at bar, despite the defendant's formal application, the trial court declined to give an instruction to the jury regarding the requirement of a corrupt intent

in order to find Mr. Alfonsi guilty of bribery under sec. 946.10 (2), Stats. We must determine whether a specific criminal intent is required for conviction under sec. 946.10 (2).

Prior to its amendment in the 1953 Criminal Code, bribery was defined in sec. 346.06 (1), Stats. 1951, and that statute (quoted in full above) expressly provided that it applied to an "officer who shall *corruptly* accept or receive . . ." (Emphasis added.) It is the state's contention that although the word "corruptly" was dropped, the "flavor of wickedness" was covered by other requirements in the new statute. Says the state in its brief, "In other words, the *concept* of corruption as an element of the crime is retained but is spelled out in definite meaningful terms."

There are a number of very persuasive reasons for the belief that the "concept of corruption" and "flavor of wickedness" were fully retained in the statute notwithstanding the changes in the criminal law brought about by the adoption of the 1953 Criminal Code. The judiciary committee report on the 1953 Criminal Code does not exhibit a legislative design to alter the crime of bribery so as to eliminate the requirement of a criminal intent. Indeed, the committee report contains language which tends to contradict such a major upheaval. At page 171 of the committee's report, the following statement appears: "Bribery of officers is restated in the new section except that public employes as well as public officers are included in the new section." Insofar as this suggests that a substantive change contemplated in the restatement of the crime was the inclusion of public *employees,* it tends to contradict the argument that so cataclysmic an alteration as the removal of corrupt intent was planned by the legislature.

In discussing the new section, the report also states:

"Subsection (2) covers the public officer or public employe who accepts a bribe. Under it he must either accept

or offer to accept any property or personal advantage and he must do so with an understanding that he will either (1) act in a certain manner in relation to a matter which by law is pending or might come before him in his capacity as such officer or employe or (2) do or omit to do an act in violation of his lawful duty."

The foregoing section also tends to demonstrate that the framers of the new enactment did not have in mind the elimination of scienter but, on the contrary, preserved the "concept of corruption" by requiring that the various acts be done "with an understanding." In our view, the latter phrase brings sec. 946.10 (2), Stats., within the scope of sec. 939.23 regarding the assertion of criminal intent in a statute.

As the supreme judicial court of Massachusetts stated in the *Corey Case*, the element of scienter is the rule rather than the exception in our criminal jurisprudence. This is particularly true with respect to the crime of bribery, which by its inherent nature has traditionally required a corrupt motivation; an illustration of the latter proposition is found in a 1937 decision of the Ohio court of appeals. In *State v. Harwood* (1937), 26 Ohio Law Abstract 473, 474, the court said:

"The gravamen of the crime of bribery lays in the despicable act of unlawfully and corruptly soliciting and accepting sums of money or things of value to influence an official's acts with respect to his official duty."

Our analysis of the language employed in the statute and its legislative background persuades this court that under sec. 946.10 (2), Stats., the crime of bribery is not one that was meant to be *malum prohibitum* but, on the contrary, is one that requires an evil or corrupt motive to be proved.

There are several other states where the element of scienter in the bribery statute is not recited any more explicitly than it is in the Wisconsin statute, yet there are indications by other courts that a corrupt intent is

nevertheless required. We fully recognize that comments by the courts of other states in considering their own statutes are not controlling as to what the Wisconsin legislature meant in this particular statute. However, we note some of the observations of other courts to illustrate the fact that so far as bribery is concerned, courts are reluctant to assume that the requirement of a corrupt intent has been eradicated.

For example, the Missouri statute (Ann. Mo. Stats. sec. 558.020) prohibits members of the legislature from accepting gifts "under any agreement" that the legislator would act in a certain way on questions before him. Although the statute does not expressly require corruptness, the Missouri court stated that "a corrupt agreement prior to the official's act is essential." *State v. Brown* (1954), 364 Mo. 759, 766, 267 S. W. (2d) 682.

The supreme court of errors of Connecticut also indicated the necessity of *mens rea* even though its need is not expressly required in the bribery statute. In *State v. Foord* (1955), 142 Conn. 285, 293, 113 Atl. (2d) 591, the court quoted the bribery statute (sec. 8487), which provides in part:

"Any . . . member of the general assembly, who shall accept or receive . . . any . . . valuable thing, except the compensation provided by law, . . . for the purpose of influencing the conduct or behavior. . . ."

In the *Foord Case*, the court said:

"To find the defendants guilty, it was essential for the court to decide that the payment and acceptance of the money were for the corrupt purpose alleged in the information."

The court of appeals of Maryland considered a charge under a bribery statute relating to athletic contests; sec. 30, art. 27 of the Maryland Code makes no direct reference to *mens rea*. In *Glickfield v. State* (1953), 203 Md. 400, 403, 101 Atl. (2d) 229, the Maryland court examined

the word "bribery" in connection with that statute and stated:

"A typical definition of the word is that found in the Oxford English Dictionary: 'To influence corruptly, by a reward or consideration, the action of (a person); to pervert the judgment or corrupt the conduct by a gift.' In the context, we think the bribery of a player refers to a corrupt influence upon his performance . . . ."

In a North Carolina decision, *State v. Greer* (1953), 238 N. C. 325, 328, 77 S. E. (2d) 917, the court considered General Statute 14–218, which provides in part as follows:

"If any person shall offer a bribe, whether it be accepted or not, he shall be guilty of a felony."

In the *Greer Case,* the court points out that "this statute neither defines bribery, nor sets forth its essential elements." The court goes on then to define the term as follows:

"Bribery may be defined generally as the voluntary offering, giving, receiving or soliciting of any sum of money, present or thing of value with the corrupt intent to influence the recipient's action as a public officer or official, or a person whose ordinary profession or business relates to the administration of public affairs, whether in the legislative, executive or judicial departments of government in the performance of any official duty required of him. The bribe must be intended, however, to influence the recipient in the discharge of a legal duty, and not a mere moral duty."

Mr. Alfonsi's counsel made a timely demand for an instruction to the jury that a requirement for conviction was that the accused had engaged in this transaction with a guilty mind. The trial court's refusal to give this crucial instruction constituted prejudicial error and necessitates a new trial.

*Other Assignments of Error.*

This court bases its reversal upon a determination that the crime of bribery is not one of strict liability but one requiring a criminal intent to be proved. There are numerous other assignments of error which are not deemed sufficient for reversal by a majority of the court but which will be discussed herein in an effort to resolve such issues or to help avoid error at the new trial.

*Vagueness of the Statute.*

The appellant contends that sec. 946.10 (2), Stats., is void for vagueness. There is a strong presumption of constitutionality favoring a legislative enactment. *State v. Kerndt* (1956), 274 Wis. 113, 79 N. W. (2d) 113. In *State v. Woodington* (1966), 31 Wis. (2d) 151, 181, 142 N. W. (2d) 810, 143 N. W. (2d) 753, the court framed the issue upon such a challenge to a statute in the following terms:

"Is the statute read as a whole so indefinite and vague that an ordinary person could not be cognizant of and alerted to the type of conduct . . . that is prohibited by the statute?"

We believe that sec. 946.10 (2), Stats., is sufficiently definite to alert a legislator that taking money in exchange for his action in connection with the passage of a bill may come within the proscription of the statute; the alleged vagueness is further obviated by the conclusion noted at the outset of this opinion, namely, that a violation requires proof of a corrupt state of mind.

In *State v. Givens* (1965), 28 Wis. (2d) 109, 117, 135 N. W. (2d) 780, this court said:

"The fact that a statute fails to itemize with particularity every possible kind of conduct which would violate such statute does not make it constitutionally vague."

A similar tenor has been expressed by the United States supreme court in *Boyce Motor Lines v. United States* (1952), 342 U. S. 337, 340, 72 Sup. Ct. 329, 96 L. Ed. 367:

"A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."

### *Alleged Deprivation of a Fair Trial.*

Mr. Alfonsi complains that he was deprived of a fair trial because of the extent and nature of the publicity which occurred both prior to the trial and during the trial. The appellant has submitted a compilation of newspaper clippings showing that there was wide publicity surrounding the grand jury which indicted Mr. Alfonsi and concerning the trial itself.

The defendant's attorneys did not request a change of venue, nor did they seek a continuance of the trial. Although it may be said that the defense thus waived two of the available safeguards, we note that under proper circumstances a trial court has an affirmative duty to take steps to protect the right of a defendant to a fair trial. In *Sheppard v. Maxwell* (1966), 384 U. S. 333, 362, 86 Sup. Ct. 1507, 16 L. Ed. (2d) 600, the court said:

"Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds

of the jurors, the *trial courts must take strong measures* to ensure that the balance is never weighed against the accused." (Emphasis added.)

When it appears that dispassionate evaluation of the evidence is rendered doubtful because of the pressure of publicity, the trial court must act *sua sponte*. In the *Sheppard Case,* at page 363, the court observed:

". . . where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity."

In our opinion, neither the pretrial publicity nor the publicity occurring during the trial was prejudicial and did not reach the point of depriving the defendant of a fair trial as a matter of due process of law. *State v. Woodington* (1966), 31 Wis. (2d) 151, 142 N. W. (2d) 810, 143 N. W. (2d) 753; *State v. Nutley* (1964), 24 Wis. (2d) 527, 129 N. W. (2d) 155. Certainly at the trial in the case at bar there was no "carnival atmosphere" such as occurred in the *Sheppard Case.*

Nevertheless, it would have been advisable for the trial court to have given an early admonition to the jurors instructing them to desist from listening to broadcasts concerning the trial or reading press stories about it. The trial court's refusal to grant the defendant's request in this regard at the outset of the trial, while not a prejudicial error, was inappropriate. In its final charge to the jury, the trial court instructed the jurors to disregard news media accounts of the trial, but there is applicable to this the statement in a concurring opinion in *United States v. Accardo* (7th Cir. 1962), 298 Fed. (2d) 133, 139: "As the jury . . . was about to be locked up in the jury room, the admonition would seem to be a bit late."

We also believe that the defendant's request that the jury be sequestered during the trial should have been

granted. The trial court has discretion on the matter of sequestration at trial, but we believe that where there has been such extensive publicity and where the trial is as brief as it was here (three days), the better exercise of discretion would be to isolate the jury.

Had the jurors been sequestered, they would not have been exposed to the newspaper headline saying "Tells of Alfonsi Payoff," which subjected the jury to an improper external pressure. The defendant readily conceded that he had received a payment; whether the payment carried with it the heinous connotation of a "payoff" was an issue before the jury. The insistence of the United States supreme court that in order to have a constitutionally fair trial a jury must be insulated from outside influences is forcefully illustrated in that court's decision of December 12, 1966, in *Parker v. Gladden*, 385 U. S. 363, 87 Sup. Ct. 468, 17 L. Ed. (2d) 420.

### Reading the Caption of the True Bill.

The entire indictment of the grand jury was read to the trial jury, and the defendant claims that this constituted prejudicial error. The caption provided as follows:

"The Jurors of the Grand Jury having been duly chosen, selected, summoned, impaneled and charged to inquire for the State of Wisconsin in and for Dane County by Richard W. Bardwell, Judge of said County and State at the January, 1966 term of Court and further, the said Court having ordered this same said Grand Jury to continue to so function during the April, 1966 term of Court, in the name of and by order of the State of Wisconsin, do upon their oaths present: . . ."

A district attorney may inform the trial jury that the appellant has been indicted by a grand jury. *State v. Krause* (1951), 260 Wis. 313, 50 N. W. (2d) 439. It is also proper to read an indictment. However, we do not

see any need for setting before the jury the caption of the true bill. The caption relates the origin of the grand jury and tends to cloak its indictment with authority. While it is surely not a prejudicial error, we would recommend that only the indictment and not the caption be submitted on the retrial.

### Proceedings Before the Grand Jury.

Prior to the trial, the defendant raised a number of challenges to the regularity of the proceedings before the grand jury. Motions for dismissal were based on such alleged errors. The trial court denied these motions and indicated that its reasons for such ruling would not be given at that time in order to avoid expanding the publicity which surrounded this case.

At the conclusion of the trial, the defendant requested that the trial judge relate for the record the reasons for his prior rulings, but the trial judge declined to do so. The defendant's motions referred to a number of meaningful challenges. While it was entirely proper for the trial judge to defer announcement of his analysis prior to the trial, we believe it to be desirable that the record ultimately contain the trial judge's reasons for his rulings. *Amalgamated Asso., etc., Division 998, v. Danielson* (1964), 24 Wis. (2d) 33, 37, 128 N. W. (2d) 9; *Oremus v. Wynhoff* (1963), 20 Wis. (2d) 635, 643, 123 N. W. (2d) 441; *Wisconsin Dairy Fresh v. Steel & Tube Products Co.* (1963), 20 Wis. (2d) 415, 421, 122 N. W. (2d) 361; *Oosterwyk v. Corrigan* (1963), 19 Wis. (2d) 464, 473, 120 N. W. (2d) 620.

### The Refusal to Reinstruct the Jury.

The trial judge instructed the jurors as follows:

"Reimbursement for traveling expenses for trips outside his district for functions that are not strictly legisla-

tive services may be accepted from sources other than the State."

During the jurors' deliberations, they informed the trial judge that they wanted further instructions as to what was meant by "strictly legislative services." The trial court declined to reinstruct on the meaning of these words and denied the jury's request for further explanation.

In our opinion, the term "strictly legislative services" is a significant phrase in the case at bar, and its meaning is not wholly free from uncertainty. It might be difficult for the trial court to interpret these words for the jury, but this would not relieve the trial court of its duty to do so. Indeed, that very difficulty would make the explanation seem all the more necessary. While the refusal to reinstruct was not prejudicial error, we believe that the trial court should have clarified this phrase upon the jury's request.

### Conclusion.

Numerous other defects in the proceedings are asserted by the appellant, but we do not feel it necessary to discuss them in this opinion. This court bases its reversal, as previously noted, upon the failure of the trial court to give the defendant the benefit of an instruction regarding a corrupt motive.

With reference to the other errors discussed in this opinion, no one of them is deemed prejudicial; in fact, there are several members of the court who would not even denominate all of them as errors. On the other hand, there are several members of the court who consider that the accumulation of such errors would, in itself, have necessitated a new trial in this case.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

HALLOWS, J. (*dissenting*). I must dissent from that part of the majority opinion stating it was error for the trial court to refuse to instruct the jury in some form to the effect a criminal or corrupt intent to commit the crime is an element of the offense defined in sec. 946.10 (2), Stats. The requested instructions contained the following language:

"*Fifth* that the defendant accepted the property pursuant to a corrupt understanding and with an intention on his part that he would do an act in violation of his lawful duty as an assemblyman.

"Before the Defendant may be found guilty of bribery, however, he must have intended that his official conduct be influenced or accepted property with the purpose and an intention on his part that his official conduct be influenced."

The requested instruction also included, "The defendant must have accepted the property with a corrupt intent."

I do not think it was error to refuse to give such an instruction and on a broader ground I do not believe sec. 946.10 (2), Stats., requires a criminal or corrupt intent.

All common-law crimes were abolished in Wisconsin. Sec. 939.10, Stats. The only crimes now existing are those defined by the legislature. Sec. 939.12. It is no "major upheaval" or "catalysmic alteration" to create a crime *malum prohibitum*. Whatever elements were necessary to constitute bribery at common law are of no importance in a statutory crime. Sec. 946.10, Stats., relating to bribery of public officials and employees, requires in sub. (1) on the part of the giver an "intent to influence the conduct of any public officer" to do or not to do an act in violation of his lawful duty. But in sub. (2) of sec. 946.10 there is no requirement of a corrupt or criminal intent in the acceptance of the "property or any personal advantage, which he is not authorized to re-

ceive," but only that the acceptance be "pursuant to an understanding . . . ."

Whenever the code intends a crime to include a specific criminal intent, it so provides or exact language is used which comes under sec. 939.23, Stats., which defines when intent is an element of a crime. For example, in sec. 946.12 relating to misconduct in office, we find the phrases, "intentionally fails," "knows is in excess of his lawful authority," "with intention to obtain a dishonest advantage for himself," "intentionally falsifies" and "intentionally solicits or accepts." In sec. 939.23, it is expressly provided that when a criminal intent is an element of crime, such intent is indicated by the term "intentionally," "with intent to," "with intent that," or some form of the words "know" or "believe." The phrase "pursuant to an understanding" is not to be equated with such criminal intent nor can it under any reasonable statutory construction be brought under this section.

As I understand *State v. Croy* (1966), 32 Wis. (2d) 118, 145 N. W. (2d) 118, this court did not hold sec. 943.21, Stats., there involved required "an intent to defraud" because the term was in the prior statute and omitted in the new section but found the requirement of such intent in the new language "intentionally absconds." Additionally, this language was used in reference to the issue of whether one who departs from a hotel leaving his baggage could be said to intentionally abscond.

I think the majority confuses criminal intent with the general intent necessary to "an understanding that he will act in a certain manner in relation to any matter which by law is pending or might come before him in his capacity as such officer . . . ." An instruction was given on this type of general intent and I think the instruction was sufficient without characterizing the understanding as having attributes of corruptness or that the money had

to be accepted with the intention on the actor's part that he would do the act in violation of his lawful duty as an assemblyman as he understood that duty.

If this section is to provide guidelines for public officials and set a standard for conduct in public office above common suspicion, then accepting money, which the officer has no right to receive, upon an understanding that he will act in a certain way in relation to a matter pending before him in his official capacity, is a sufficient prohibition and it should not be necessary to also prove a subjective corrupt or a criminal intent. By such an act even without a corrupt intent, a legislator forecloses himself from considering or reconsidering the matter at the time it is legally before him in his capacity as a legislator and it is his duty to vote. This effect commanding the legislator's vote is the gist of the crime. The majority opinion does not state what specific criminal intent the statute requires, only that the intent be criminal or corrupt. Such a requirement emasculates the crime of bribery as defined in sec. 946.10 (2), Stats., for public officers and employees and renders the section an entirely ineffectual piece of legislation.

I am authorized to state that Mr. Justice HEFFERNAN joins in this dissenting opinion.