## STATE v. HENRY S. FALCONE.

195 N. W. 2d 572.

March 3, 1972—No. 42277.

*C. Paul Jones,* State Public Defender, *Reese C. Johnson,* Special Assistant State Public Defender, and *Doris O. Huspeni,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Keith M. Brownell,* County Attorney, and *Curtis H. Foster,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, and Peterson, JJ.

ROGOSHESKE, JUSTICE.

The defendant, having executed a written waiver of immunity from self-incrimination, testified before a grand jury which subsequently indicted him on several charges, including one count for theft of $150 in violation of Minn. St. 609.52, subd. 2(3).[1] Defendant was acquitted on all counts except the count for theft of $150, on which he was found guilty.

---

[1] Minn. St. 609.52, subd. 2(3), provides in part that a theft is committed by one who "[o]btains for himself or another the possession, cus-

At defendant's trial, the assistant county attorney, who had been present during defendant's appearances before the grand jury, was permitted to testify as to defendant's inculpatory admissions before the grand jury. The jury's verdict of guilt is substantially supported by this unrefuted testimony, and defendant in this appeal asks us to grant a new trial upon the ground that the testimony should have been excluded because its admission violated our statutory scheme of secrecy governing grand jury proceedings. We disagree and affirm.

Defendant was superintendent of the water department of the city of Chisholm during 1967 and 1968. In 1968, a grand jury was formed to interview several witnesses concerning the conduct of officials of the city of Chisholm, and the defendant was summoned to appear. Before testifying, defendant executed a written waiver of his Fifth Amendment right to immunity against self-incrimination, after which he made three separate appearances before the grand jury in November and December 1968. The grand jury later issued its indictments against defendant.

The state informed defendant's counsel that it would introduce testimony of the assistant county attorney as to defendant's inculpatory admissions before the grand jury. At a pretrial Rasmussen hearing and again at trial, objection was made to the admission of this evidence on the ground that its admission would violate the letter and spirit of Minn. St. c. 628, which protects the secrecy of the grand jury proceedings. These objections were overruled, and the assistant county attorney testified at trial that defendant, at his third appearance before the grand jury, admitted having altered work records of the Chisholm Water Department to show an employee on vacation when in fact the employee was working on the private cabin of another

---

tody or title to property of a third person by intentionally deceiving him with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made."

city official; that defendant admitted knowing that the employee was not performing any services for the water department and that the employee was wrongly compensated from public funds for his work on the cabin; and that defendant also admitted having given false testimony concerning this matter during his two previous appearances before the grand jury. Defendant did not testify at trial, nor were any members of the grand jury called to refute the testimony of the assistant county attorney despite the court's offer to defense counsel to permit interrogation of grand jurors as to their recollection of defendant's testimony.

The crucial issue raised is whether our statutory veil of secrecy governing grand jury proceedings is violated if a member of the county attorney's staff is permitted to testify at trial as to admissions made by the potential defendant before the grand jury after he has voluntarily executed a written waiver of his right to immunity against self-incrimination. Where the waiver is voluntarily and knowingly made and there is no hint of impropriety in obtaining it, we hold that the court does not err in admitting the testimony.

It is generally acknowledged that the grand jury has its origin in the English common law. It was introduced into England by the Normans and in its primitive form was merely a body of neighbors who were summoned, given an oath, and requested to render a true answer to a question propounded by the authorities. During the reign of Henry II (1154-1189), it became an arm of the Crown and began to evolve as a prosecutory agency charged with the duty of ferreting out persons suspected of committing certain offenses. By the 1350's, the jury was prohibited from sitting as both the indicting jury and the trial jury. In 1368, a distinct body called "le graunde inquest" emerged, which was an accusatory body empowered to lodge criminal charges with or without the aid of a private accuser. This body adopted the procedure of hearing testimony in private, which proved to be a significant safeguard against the ever-present abuses by the

Crown. It was this common-law tradition of secrecy, initially stemming from a need to protect the grand jurors and private citizens from oppression of the state, which was the underpinning of our grand jury procedure as it evolved early in American jurisprudence.[2]

The fear of state coercion has lessened since these earlier times, but the overriding concern for the protection of jurors to promote their investigatory function lingers.[3] Today, grand jury secrecy is arguably justified on the grounds that the jury's deliberations should not be restricted by the apprehension that persons subject to indictment, or their cohorts, may be given the opportunity to importune the jurors; that witnesses who have information are thereby encouraged to give testimony free of tampering; that an innocent suspect who is exonerated is afforded protection against disclosure of the fact that he has been groundlessly accused or under investigation; and that prosecution authorities are protected against the risk that a person indicted might flee the jurisdiction before his apprehension.[4]

---

[2] Calkins, *Grand Jury Secrecy,* 63 Mich. L. Rev. 455 (1965). See, State v. Iosue, 220 Minn. 283, 292, 19 N. W. 2d 735, 739 (1945); Note, 37 Minn. L. Rev. 586, 587, note 4 (1953); Kuh, *The Grand Jury "Presentment":* *Foul Blow or Fair Play?,* 55 Col. L. Rev. 1103 (1955); Morse, *A Survey of the Grand Jury System,* 10 Ore. L. Rev. 101 (1931); 1 Holdsworth, A History of English Law 312 (3 ed. 1922); Edwards, The Grand Jury, 1 to 44 (1906); 1 Stephen, A History of the Criminal Law of England, 184, 250 (1883).

[3] Of paramount importance is the maintenance of secrecy concerning the deliberations and votes of the grand jurors themselves, both during and subsequent to a hearing. The citizen who assumes this high and responsible duty must be assured that the law will not permit him to be subjected to the malice and consequent injury that might result from an accused neighbor's knowledge that he advocated and voted for the latter's indictment." Calkins, *supra,* p. 459. See, Minn. St. 628.64.

[4] United States v. Rose, 215 F. 2d 617, 628 (3 Cir. 1954); Calkins, footnote 2, *supra,* p. 458. This or similar language has often been repeated. See, in particular, United States v. Badger Paper Mills, Inc. 243 F. Supp. 443 (E. D. Wis. 1965); Herman Schwabe, Inc. v. United Shoe Machinery Corp. 194 F. Supp. 763 (D. Mass. 1958); State v. Morgan, 67 N. Mex. 287,

While the secrecy of the grand jury proceedings remains zealously protected by statute in our state,[5] the statutory scheme, virtually unchanged since its inception in 1851, is not manifestly at variance with the enumerated reasons for secrecy. The clear emphasis of the statute is that the secrecy veil is particularly intended to protect the jurors from disclosure of statements made by any member during the scope of their investigation or during their deliberations.[6] Other than members of the grand jury, those concerned with its proceedings, including the county attorney, may not disclose that an indictment has been issued

354 P. 2d 1002 (1960); 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2360.

[5] Minn. St. 628.64 to 628.68. See, State v. Mastrian, 285 Minn. 51, 171 N. W. 2d 695 (1969), certiorari denied, 397 U. S. 1049, 90 S. Ct. 1381, 25 L. ed. 2d 662 (1970).

[6] The sections of the statute germane to this discussion are as follows:

Minn. St. 628.57: "The grand jury shall then retire to a private room and inquire into the offenses cognizable by it. It shall appoint one of its number clerk, who shall preserve the minutes of its proceedings, but not of the votes of the individual members on a presentment or indictment, or of the evidence given before them."

§ 628.64: "Every grand juror shall keep secret whatever he himself or any other grand juror said, or in what manner he or any other grand juror voted, on a matter before them."

§ 628.65: "Any grand juror may be required by any court to disclose the testimony of any witnesses examined before the grand jury, for the purpose of ascertaining whether it is consistent with that given by the witnesses before the court, or to disclose the testimony given before it by any other person, upon a charge against him for perjury in giving his testimony, or upon his trial therefor."

§ 628.66: "A grand juror shall not be questioned for anything he may say or any vote he may give in the grand jury relative to a matter legally pending before the jury, except for a perjury of which he may be guilty in making an accusation, or giving testimony to his fellow jurors."

before the accused has been apprehended unless it is in the discharge of official duty.[7]

Although there are currently many proposals to liberalize the outmoded concept of secrecy of grand jury proceedings, particularly in permitting the defense counsel to discover grand jury minutes and documents to prepare for trial,[8] our decision here is not controlled by those proposals but rather by the historic posture of grand jury secrecy, which never contemplated afford-

---

[7] Minn. St. 628.68 provides:

"Every judge, grand juror, county attorney, clerk, or other officer, who, except in the due discharge of his official duty, shall disclose, before an accused person shall be in custody, the fact that a presentment has been made or an indictment found or ordered against him, and every grand juror who, except when lawfully required by a court or officer, shall wilfully disclose any evidence adduced before the grand jury, or anything which he himself or any other member of the grand jury said, or in what manner he or any other grand juror voted upon any matter before them, shall be guilty of a misdemeanor. Provided, however, disclosure may be made by the county attorney, by notice to the defendant or his attorney of the indictment and the time of defendant's appearance in the district court, if in the discretion of the judge such notice is sufficient to insure defendant's appearance."

[8] When a presentment is made, in contrast to the issuance of an indictment, the defense attorney may discover the grand jury minutes. § 628.04. See, State ex rel. Robertson v. Steele, 117 Minn. 384, 135 N. W. 1128 (1912). This strict denial of discovery after indictment is in need of reconsideration in the light of well-reasoned proposals to provide pretrial discovery by defendant of the minutes, witness lists, and documents submitted to the grand jury. See, A. B. A. Standards for Criminal Justice, Discovery and Procedure Before Trial, § 2.1 (Approved Draft, 1970); Calkins, footnote 2, *supra*, p. 465; Louisell, *Criminal Discovery: Dilemma Real or Apparent?*, 49 Calif. L. Rev. 56 (1961). See, also, State v. Mastrian, footnote 5, *supra;* McCormick, Evidence, § 150 and note 3 (1954); Rule 6(e), Federal Rules of Criminal Procedure; Brennan, Remarks on Discovery, in Discovery in Federal Criminal Cases, 33 F. R. D. 47, 56 (1963); Calif. Law Revision Comm., The Uniform Rules of Evidence, Rule 35 (1964); A. L. I., Model Code of Evidence, Rule 229 (1942).

ing protection to an indicted defendant.[9] Therefore, as most jurisdictions have ruled when faced with the issue presented, the prosecuting attorney may testify at trial as to defendant's admissions before the grand jury where defendant is found to have waived his right against self-incrimination prior to testifying.[10] And several jurisdictions, in the face of statutory language similar to ours and restricting the use of a grand juror's testimony to impeachment or to situations where perjury is at issue, have allowed a grand juror to testify as to what the defendant admitted on the ground that furtherance of justice and protection of the public transcends grand jury secrecy at the trial stage of a criminal proceeding.[11]

[9] In re Grand Jury Proceedings, 4 F. Supp. 283, 284 (E. D. Pa. 1933); United States v. Smyth, 104 F. Supp. 283, 304 (N. D. Cal. 1952); State v. Rothrock, 45 Nev. 214, 222, 200 P. 525, 527 (1921); Commonwealth v. Kirk, 141 Pa. Super. 123, 14 A. 2d 914 (1941), affirmed, 340 Pa. 346, 17 A. 2d 195 (1941); Howard v. State, 60 Ga. App. 229, 235, 4 S. E. 2d 418, 423 (1939); State v. Krause, 260 Wis. 313, 322, 50 N. W. 2d 439, 444 (1951); State v. Bates, 148 Ind. 610, 48 N. E. 2 (1897); 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2360. But see, McLellan v. Richardson, 13 Maine 82 (1836).

[10] Metzler v. United States, 64 F. 2d 203 (9 Cir. 1933); People v. Larue, 28 Cal. App. 2d 748, 83 P. 2d 725 (1938); Jenkins v. State, 35 Fla. 737, 18 So. 182 (1895); New Hampshire Fire Ins. Co. v. Healey, 151 Mass. 537, 24 N. E. 913 (1890). A defendant who is called as a witness before the grand jury and whose testimony sustains an indictment against him is protected by his constitutional right against self-incrimination and is immune from prosecution based on his testimony. This immunity can be asserted to quash an indictment against the defendant. See, Calkins, footnote 2, *supra*, p. 475 and notes 82 and 83. See, in particular, United States v. Lawn, 115 F. Supp. 674 (S. D. N. Y. 1953); State v. Lloyd, 152 Wis. 24, 139 N. W. 514 (1913); State v. Rixon, 180 Minn. 573, 231 N. W. 217 (1930).

[11] That grand jurors may be required to testify to impeach or if perjury is charged does not necessarily limit their testimony to these instances. Hinshaw v. State, 147 Ind. 334, 47 N. E. 157 (1897). See, also, State v. Campbell, 73 Kan. 688, 85 P. 784 (1906); State v. Mageske, 119 Ore. 312, 249 P. 364 (1926); State v. Broughton, 29 N. C. (7 Iredell) 96

By this decision we do not mean to encourage prosecution of a criminal offense which is substantially dependent upon testimony of the prosecutor to obtain a conviction.[12] Prosecutors enjoy the special privilege of having access to the grand jury and giving it assistance, short of joining in its deliberations. In prosecutions based on grand jury indictments, the prosecutor is necessarily a most important source of aid and guidance to the grand jury, and he exercises tremendous influence over the handling and direction of its entire investigatory process.[13] Approaching but unlike this case, the prosecutor's sacrosanct duty as an investigatory aid and legal advisor to the grand jury is tainted and our statutory scheme is violated when he uses a mechanical tape recorder to record a part of its proceeding. State v. Mastrian, 285 Minn. 51, 171 N. W. 2d 695 (1969), certiorari denied, 397 U.S. 1049, 90 S. Ct. 1381, 25 L. ed. 2d 662 (1970). Under such circumstances, knowledge by grand jurors and witnesses that the proceedings are being recorded on tape could very well, despite our express statutory requirements of secrecy as revealed by the judge of the district court in his instructions to the grand jury, inhibit the jurors' questioning of witnesses; create fear of the possibility that the identity of innocent parties under investigation may be disclosed to the public; or provide an indicted defendant with an early opportunity (by employing corrupt tactics) to discover and tamper with witnesses appearing before the grand jury.

---

(1846); United States v. Kirkwood, 5 Utah 123, 13 P. 234 (1887); People v. Reggel, 8 Utah 21, 28 P. 955 (1892); 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2363, and notes 2 and 3. But see, In re Will of Pinney, 27 Minn. 280, 6 N. W. 791, 7 N. W. 144 (1880); People v. Thompson, 122 Mich. 411, 81 N. W. 344 (1899).

[12] This testimony was not crucial to the state's proof since documentary evidence and the unrefuted testimony of other witnesses amply support defendant's conviction.

[13] Note, 37 Minn. L. Rev. 586, 600 (1953); 1, A. L. I.—A. B. A. Joint Committee on Continuing Legal Education, Trial Manual for the Defense of Criminal Cases, § 155 (1967).

Recently the prosecutor's function before the grand jury has been under scrutiny, particularly in those instances where the witness from whom testimony is sought is a potential defendant. In such instances, due regard for the privilege against self-incrimination and the right to counsel compel the prosecutor to advise the witness, before seeing his testimony before a grand jury, that he may be implicated and that he should seek legal advice concerning his rights. The prosecutor cannot use devious means to obtain a waiver of immunity from the potential defendant for his grand jury testimony which the prosecutor thereafter offers as evidence at trial. See, A. B. A. Standards for Criminal Justice, The Prosecution Function and the Defense Function, Prosecution Function, §§ 3.1(b) and 3.6(d) (Approved Draft, 1971). Therefore, under our present statutory scheme, in order to ensure proper protection of the rights of an accused and to maintain the integrity of the prosecuting attorney's role in his relation to the grand jury, testimony by any member of the prosecutory staff at trial as to admissions made by defendant before the grand jury will be limited to those instances where the trial court finds that defendant voluntarily executed a waiver of immunity with knowledge that not only may his testimony before the grand jury lead to an indictment against him, but also that his grand jury testimony may be admissible at his trial brought pursuant to such indictment. Cf. State v. Iosue, 220 Minn. 283, 19 N. W. 2d 735 (1945). We are satisfied that such a finding, implicit in the rulings of the trial court, is supported by the record in this case.

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.